IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-02624-PAB-NRN

MARIA J. PRKIC,

Plaintiff,

v.

SEZZLE, INC.,

Defendant.

---

**REPORT AND RECOMMENDATION ON
DEFENDANT'S PARTIAL MOTION TO DISMISS (ECF No. 38)**

---

**N. REID NEUREITER**
**United States Magistrate Judge**

This matter is before the Court pursuant to the Order issued by Chief Judge Philip A. Brimmer, ECF No. 39, referring Defendant Sezzle, Inc.'s ("Sezzle") Partial Motion to Dismiss, ECF No. 38. Plaintiff Maria J. Prkic filed a response, ECF No. 48, and Defendant filed a reply, ECF No. 52. On March 18, 2025, the Court held a hearing on the motion. ECF No. 60. The Court has taken judicial notice of the case file and considered the applicable federal and state statutes and case law. For the reasons discussed below, it is hereby **RECOMMENDED** that Defendant's Partial Motion to Dismiss (ECF No. 38) be **GRANTED**.

I. **BACKGROUND**[1]

Sezzle, a financial technology company, hired Plaintiff as a paralegal on February 24, 2023, and she began work on March 8, 2023. ECF No. 1-1 at 11. Plaintiff has had extensive experience working in banks and law firms. *Id.* at 14–15. Based on this experience, Jack Cohen (Plaintiff's supervisor) asked her if she would be willing to serve as an Anti-Money Laundering ("AML") Officer for the legal team, which would be accompanied by a pay raise and title change. On April 10, 2023, the Sezzle Board of Directors approved Plaintiff's appointment as an AML Officer, and she assumed her new job duties.

An AML Officer is responsible for "[t]raining employees on AML policies and procedures, and how to identify and report suspicious activity," "[i]dentifying, assessing, monitoring, and managing risks associated with money laundering, terrorist financing, and child and human trafficking," "[c]onducting internal audits and ensuring compliance with financial regulations and personal data requirements," "[r]eporting suspicious transactions or financial crimes to law enforcement agencies," "[w]orking with law enforcement officials and financial institutions when there are signs of organizational financial crime," "[d]eveloping, updating, and implementing policies and procedures that address key issues, risk appetites, and acceptable behaviors," "[a]ssisting with the

---

[1] Unless otherwise noted, all factual allegations are taken from the Complaint, ECF No. 1, and are presumed to be true for the purposes of the Motion to Dismiss. Any citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination. Additionally, the Court considers documents attached to the Complaint. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).

implementation of an organization's AML program," and "[a]rranging inspections from third-party organizations and fixing any oversights in the program." *Id.* at 32.

Plaintiff noticed that "Sezzle was utilizing an algorithm that failed to report when a consumer borrower had paid their balance to Sezzle and, due to that failure, the algorithm automatically reported consumer borrowers to the collection agencies even if they were current with their Sezzle repayment obligations." *Id.* at 3. Plaintiff alleges that she "flagged" this issue, but does not allege what "flagged" means or who she spoke to about the issue.

Plaintiff also alleges that, at some point, Sezzle Deputy General Counsel Tim Joyce resigned, and a number of his tasks "for Legal" were reassigned to Plaintiff in her role as AML Officer. *Id.* at 6–7.

As of April 8, 2024, Plaintiff had not yet received a pay increase or change in title. In a Slack message, she told Lee Brading (Sezzle's Chartered Financial Analysis and Senior VP of Corporate Development, Investor Relations, and Operational Excellence) "that the inconsistency with her title was a potential violation of bank sponsorship regulations and that the bank sponsors Sezzle was dealing with required proof that she was the official AML Officer." *Id.* at 3, 33–35. Shortly thereafter, Plaintiff was disinvited from "Financial Crimes meetings." *Id.* at 4.

On April 26, 2024, Kerissa Hollis (Sezzle Interim General Counsel) told Plaintiff that her AML Officer duties had been reassigned to another employee. *Id.* at 36–40. Ms. Hollis stated that this change was occurring because Sezzle had decided to put the AML Officer job function within the compliance department and not the legal department

"in case we have to sign off on something that they do." *Id.* at 36. Plaintiff stated that she was fine with performing only her paralegal job responsibilities. *Id.* at 37.

Consequently, Plaintiff stopped performing AML Officer duties. *Id.* at 4. However, Plaintiff alleges that "Defendant expected Plaintiff to continue performing AML Officer duties under a title inconsistent with those duties (e.g., Paralegal) and in violation of bank sponsorship regulations." *Id*. Plaintiff believes that "Sezzle continued to hold Plaintiff out as the AML Officer and numerous members of Plaintiff's team and external partners continued to believe they could reach out to her to assist with duties associated with an AML Officer." *Id.* at 4, 44–47.

On May 28, 2024, Sezzle terminated Plaintiff's employment. *Id.* at 41–43. Plaintiff alleges that she was effectively demoted and terminated for complaining that she had not received the pay increase and title change in exchange for assuming AML Officer job duties, and for reporting to Sezzle the wrongful practices that she had observed.

Plaintiff brings five claims against Sezzle. In Count 1, Plaintiff alleges that Sezzle violated a provision of the Sarbanes-Oxley Act ("SOX Act"). In particular, Plaintiff alleges that Sezzle violated 18 U.S.C. § 1514A(a)(1)(C) because it retaliated against her by demoting her and later terminating her employment after she reported to a supervisor conduct that she reasonably believed constituted a violation of 18 U.S.C. §§ 1341, 1343, 1344, or 1348 and/or a Securities and Exchange Commission ("SEC") rule or regulation.

In Count 2, Plaintiff alleges that Sezzle violated a provision of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank Act"). In particular,

4

Plaintiff alleges that Sezzle violated 15 U.S.C. § 78u-6(h)(1)(A), because she was demoted and later terminated for engaging in protected activity.

In Count 3, Plaintiff alleges that Sezzle violated the Colorado Equal Pay for Equal Work Act ("EPEWA"), Colo. Rev. Stat. §§ 8-5-101 through 8-5-206, because she was paid "far less" than former Sezzle Deputy General Counsel Tim Joyce when she was reassigned some of his job responsibilities upon his resignation.

In Count 4, Plaintiff alleges that Sezzle wrongfully terminated Plaintiff in violation of public policy.

In Count 5, Plaintiff brings a breach of contract claim based on Sezzle's failure to change Plaintiff's title and increase her pay after she became AML Officer.

Sezzle now moves to dismiss Counts 1, 2, 3, and 4 for failure to state a claim under Fed. R. Civ. P. 12(b)(6). The breach of contract claim is not challenged at this stage.

## II. LEGAL STANDARDS

### a. Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). "A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935

5

F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679–81. Second, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679.

### b. Pro Se Plaintiff

The Court must construe the Complaint and other papers filed by Plaintiff liberally because she is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Hall*, 935 F.2d at 1110. However, the Court should not be an advocate for a pro se litigant. *See Hall*, 935 F.2d at 1110; *Craig v. McCollum*, 590 F. App'x 723, 726 (10th Cir. 2014) ("Our liberal construction of pro se petitions does not exempt them from the rules of procedure binding the petitions of other litigants.") (citation omitted).

## III. ANALYSIS

### a. SOX Act Claim

Sezzle argues that Plaintiff's SOX Act claim must be dismissed because Plaintiff failed to exhaust administrative remedies, and because she has not alleged any

underlying conduct that she complained about that is covered by the SOX Act. For the reasons explained below, the Court agrees that Plaintiff has failed to exhaust administrative remedies, and does not reach Sezzle's second argument for dismissal.

The SOX Act provides in relevant part:

> No company with a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 78*l*) . . . may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee . . . to provide information . . . regarding any conduct which the employee reasonably believes constitutes a violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the [SEC], or any provision of Federal law relating to fraud against shareholders, when the information or assistance is provided to . . . a person with supervisory authority over the employee.

18 U.S.C.A. § 1514A(a).

The SOX Act contains a requirement that a claimant exhaust her administrative remedies before filing suit. *See Digital Realty Tr., Inc. v. Somers*, 583 U.S. 149, 153–54 (2018). In reference to the above section of the SOX Act, the Act further provides that "[a] person who alleges discharge or other discrimination by any person in violation of subsection (a) may seek relief under subsection (c), by . . . filing a complaint with the Secretary of Labor." *Id.* § 1514A(b)(1). Such an action "shall be commenced not later than 180 days after the date on which the violation occurs, or after the date on which the employee became aware of the violation." *Id.* § 1514A(b)(2)(D). "[I]f the Secretary has not issued a final decision within 180 days of the filing of the complaint and there is no showing that such delay is due to the bad faith of the claimant," then the claimant may bring "an action at law or equity for de novo review in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy." *Id.* § 1514A(b)(1)(B). The Occupational Health and Safety

7

Administration ("OSHA") "is the division of the Department of Labor that is responsible for performing investigations of complaints filed under SOX." *Genberg v. Porter*, 935 F. Supp. 2d 1094, 1103 (D. Colo. 2013) (citing *Morrison v. MacDermid, Inc.*, No. 07-cv-01535-WYD-MJW, 2008 WL 4293655, at *3 (D. Colo. Sept. 16, 2008)), *aff'd in part, appeal dismissed in part*, 566 F. App'x 719 (10th Cir. 2014). "Thus, SOX's plain language dictates that a plaintiff alleging a SOX violation must exhaust his administrative remedies by filing a complaint with OSHA." *Id.* This requirement is not jurisdictional, but it "is mandatory and is 'akin to a statute of limitations.'" *Gordon-Kelly v. Tatum*, No. 23-CV-426-RAW-GLJ, 2024 WL 2043162, at *1 (E.D. Okla. Mar. 25, 2024), *report and recommendation adopted*, 2024 WL 3226003 (E.D. Okla. June 27, 2024).

In response, Plaintiff argues that the SOX Act's administrative exhaustion requirement "does not bar federal court claims when the employer had actual notice of the whistleblowing activity." ECF No. 48 at 4. Plaintiff cites various cases that do not support the proposition. Plaintiff first cites *Fraser v. Fiduciary Trust Co. International*, 417 F. Supp. 2d 310, 322 (S.D.N.Y. 2006). While *Fraser* discusses the pleading standards for a SOX Act claim, the administrative exhaustion provisions of the SOX Act were not at issue, and indeed the court noted that the plaintiff had filed an OSHA complaint. *Id.* at 322. Similarly, in *Lockheed Martin Corp. v. Administrative Review Board, U.S. Department of Labor*, 717 F.3d 1121 (10th Cir. 2013), the plaintiff filed an OSHA complaint, so the court did not have occasion to discuss the administrative exhaustion requirements. So too did the plaintiff in *Zulfer v. Playboy Enterprises, Inc.*, CV1208263MMMSHX, 2013 WL 12132075 (C.D. Cal. Apr. 24, 2013). *See* ECF No. 52-1. Plaintiff additionally argues that she followed the employee handbook procedures.

8

But this is not relevant to whether Plaintiff has satisfied the administrative exhaustion requirement. Plaintiff has not argued that the 180-day deadline should have been tolled.

Here, Plaintiff has not alleged that she filed an OSHA complaint as required to exhaust administrative remedies under the SOX Act. Additionally, the Court takes judicial notice of the December 6, 2024 letter from OSHA to defense counsel, in response to defense counsel's Freedom of Information Act ("FOIA") request, stating that Plaintiff did not file a charge of discrimination at any time from March 8, 2023 (the start of her employment at Sezzle) through May 28, 2024 (180 days following the termination of her employment).[2] Additionally, Plaintiff stated at the March 18, 2025 hearing that she "did not file an official SOX complaint as a whistleblower." ECF No. 62 at 15:24–25; *see also* ECF No. 61 (supplemental filing made by Plaintiff stating that she filed a complaint with OSHA on February 15, 2025, more than 180 days after her employment ended).

Because Plaintiff failed to exhaust administrative remedies by filing an OSHA complaint as required under the SOX Act, and because 180 days have passed since the alleged violation occurred, the Court recommends that Plaintiff's SOX Act claim be dismissed with prejudice.

### b. Dodd Frank Act Claim

Sezzle argues that Plaintiff's Dodd-Frank Act claim must be dismissed because Plaintiff has not alleged that she filed a complaint with the SEC during her employment, and because Plaintiff has not alleged any underlying conduct that she complained about that is covered by the Dodd-Frank Act. For the reasons explained below, the Court

---

[2] Courts may take judicial notice of facts which are a matter of public record. *Pacheco*, 627 F.3d at 1194.

9

agrees that Plaintiff has failed to allege that she is a whistleblower as defined by the Dodd-Frank Act, and does not reach Sezzle's second argument for dismissal.

The Dodd-Frank Act contains an anti-retaliation provision which provides, in relevant part:

> No employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower-- (i) in providing information to the [SEC] in accordance with this section; (ii) in initiating, testifying in, or assisting in any investigation or judicial or administrative action of the [SEC] based upon or related to such information; or (iii) in making disclosures that are required or protected under the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 et seq.), this chapter, including section 78j-1(m) of this title, section 1513(e) of Title 18, and any other law, rule, or regulation subject to the jurisdiction of the [SEC].

15 U.S.C. § 78u-6(h)(1)(A). A whistleblower is defined as "any individual who provides . . . information relating to a violation of the securities laws to the [SEC], in a manner established, by rule or regulation, by the [SEC]." *Id.* § 78u-6(a)(6). In *Digital Realty*, the Supreme Court confirmed that the Dodd-Frank Act's anti-retaliation provision does not "extend to an individual who has not reported a violation of the securities laws to the SEC." 583 U.S. at 153 ("To sue under Dodd-Frank's anti-retaliation provision, a person must first "provid[e] . . . information relating to a violation of the securities laws to the [SEC].'"). *Digital Realty* found that because the plaintiff "did not provide information 'to the [SEC]' before his termination, . . . he did not qualify as a 'whistleblower' at the time of the alleged retaliation." *Id.* at 163; *see also Toren-Edmiston v. Wells Fargo & Co.*, No. 19-cv-00779-PAB-NYW, 2020 WL 13932692, at *3 n.4 (D. Colo. May 26, 2020).

In response, Plaintiff argues that "courts have recognized exceptions where internal reporting is sufficient, particularly for compliance professionals." ECF No. 48 at

6 (citing *Zulfer*, 2013 WL 12132075, at *13). However, *Zulfer* did not substantively address a Dodd-Frank Act claim. Additionally, while *Berman v. Neo@Ogilvy LLC*, 801 F.3d 145 (2d Cir. 2015), held that an employee was entitled to pursue Dodd-Frank remedies for alleged retaliation after his report of wrongdoing to his employer, despite not having reported to the SEC before his termination, *Digital Realty* expressly abrogated this holding three years later, 583 U.S. at 145.

In this case, Plaintiff did not allege in the Complaint that she filed a complaint with the SEC. In her response, she does not dispute that she has not filed such a complaint, and states that she contacted the SEC after Sezzle terminated her employment. ECF No. 48 at 7. Accordingly, the Court recommends that Plaintiff's Dodd-Frank Act claim be dismissed. *See Carter v. Genesis Alkali, LLC*, No. 20-CV-216-SWS, 2021 WL 7209884, at *4 (D. Wyo. June 2, 2021) (granting motion to dismiss Dodd-Frank Act claim where the complaint's allegations "fail to show [the plaintiff] made a complaint about [his employer's] violations of securities laws to the SEC during his employment, qualifying him to receive protection under the Dodd-Frank Act"). Additionally, the Court recommends that this claim be dismissed with prejudice because Plaintiff is no longer employed by Sezzle and therefore cannot make a complaint to the SEC during her employment.

### c. Wrongful Termination in Violation of Public Policy

Sezzle argues that Plaintiff's claim for wrongful termination in violation of public policy is derivative of her SOX Act and Dodd-Frank Act claims, and should therefore also be dismissed for failure to exhaust administrative remedies and failure to qualify as a whistleblower under the Dodd-Frank Act. Sezzle further argues that this claim is

11

unavailable because the SOX Act and Dodd-Frank Act themselves provide a comprehensive wrongful discharge remedy.

The Colorado common law claim for wrongful termination in violation of public policy "restricts an employer's right to terminate when the termination contravenes accepted and substantial public policies as embodied by legislative declarations, professional codes of ethics, or other sources." *Wisehart v. Meganck*, 66 P.3d 124, 127 (Colo. App. 2002) (citing *Rocky Mountain Hosp. & Med. Serv. v. Mariani*, 916 P.2d 519 (Colo. 1996)). "Colorado law is clear that a separate public policy wrongful discharge claim is not available where the statute at issue provides a wrongful discharge remedy." *Miles v. Martin Marietta Corp.*, 861 F. Supp. 73, 74 (D. Colo. 1994) (citing *Smith v. Colo. Interstate Gas Co.*, 777 F. Supp. 854, 858 (D. Colo.1991); *Gamble v. Levitz Furniture Co.*, 759 P.2d 761, 766 (Colo. Ct. App. 1988)).

Here, Plaintiff alleges that she was wrongfully terminated because she reported Sezzle's unlawful practices. The alleged unlawful practices that form the basis of her wrongful termination claim also form the basis of her SOX Act and Dodd-Frank Act claims. As previously discussed, both Acts include remedies for retaliatory termination. *See Hein v. AT&T Operations*, *Inc.*, No. 09-cv-00291-WYD-CBS, 2010 WL 5313526, at *5 (D. Colo. Dec. 17, 2010) (holding that a plaintiff's SOX Act claim "precludes her wrongful discharge claim because when a statute 'sets forth both a policy and a remedy for discharge in violation of that policy, no need for the court-fashioned public policy exception exists'"); 15 U.S.C. § 78u-6(h)(1)(A) (providing remedy for an employee discharged or demoted for engaging in certain whistleblower activities). For these

12

reasons, the Court recommends that Plaintiff's wrongful termination claim be dismissed with prejudice.

### d. EPEWA Claim

The EPEWA provides in relevant part:

> An employer shall not discriminate between employees on the basis of sex . . . by paying an employee of one sex a wage rate less than the rate paid to an employee of a different sex for *substantially similar* work, regardless of job title, based on a composite of skill; effort, which may include consideration of shift work; and responsibility . . . .

Colo. Rev. Stat. § 8-5-102(1) (emphasis added). Under the law, an employer shall not "[d]ischarge, or in any manner discriminate or retaliate against, an employee for invoking this section on behalf of anyone." *Id.* § 8-5-102(2)(d). The EPEWA became effective on January 1, 2021, and few courts have had occasion to apply it. However, the EPEWA is very similar to the federal Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), which provides in relevant part:

> No employer . . . shall discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for *equal work* on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions . . . .

29 U.S.C. § 206(d) (emphasis added). The Court notes that while the EPA protects employees who perform "equal work" compared to employees of the opposite sex, the EPEWA protects employees who perform "substantially similar work." Nevertheless, where the provisions and purposes of a state statute parallel those of a federal statute, courts consider federal case law to be "highly persuasive." *McDonald v. People*, 494 P.3d 1123, 1128 (Colo. 2021). Accordingly, the Court examines the pleading standards courts apply in EPA

13

cases in order to determine whether Plaintiff has adequately pled an EPEWA claim in this case.

To plead an EPA claim, a plaintiff must allege facts that could plausibly show "'(1) she was performing work which was substantially equal to that of the male employees considering the skills, duties, supervision, effort and responsibilities of the jobs (2) the conditions where the work was performed were basically the same (3) the male employees were paid more under such circumstances.'" *Paffe v. Wise Foods, Inc.*, No. 1:24-cv-00402-RMR-SBP, 2025 WL 685213, at *2 (D. Colo. Feb. 25, 2025) (quoting *Riser v. QEP Energy*, 776 F.3d 1191, 1196 (10th Cir. 2015)); *see also Merrill v. Cintas Corp.*, 941 F. Supp. 1040, 1043 (D. Kan. 1996). "Work is substantially equal if it requires equal responsibility, effort, and skill to that of the allegedly equal position." *Id.* (citing 29 U.S.C. § 206(d)(1)). Applying this holding to the EPEWA context in this case, the Court finds that one of the requirements for Plaintiff to plead an EPEWA claim is that Plaintiff must allege facts that could plausibly show that she was performing work which was substantially similar to that of a male employee. A determination of whether the work was substantially similar is "based on a composite of skill; effort . . . and responsibility." Colo. Rev. Stat. § 8-5-102(1).

Sezzle argues that this claim must be dismissed because Plaintiff has not pled the existence of a comparable employee who performed substantially similar work as Plaintiff. The Court agrees. In the Complaint, Plaintiff alleges that she was originally hired as a paralegal, but was later assigned the responsibilities of an AML Officer (though she also alleges that was never given the agreed-upon

14

pay raise and title change). She further alleges that at some point, Sezzle's Deputy General Counsel resigned, and a number of his tasks "for Legal" were reassigned to Plaintiff in her role as AML Officer. Plaintiff does not provide any additional detail as to what these tasks were. Accordingly, the Court cannot find that Plaintiff has adequately pled an EPEWA claim, and recommends that this claim be dismissed without prejudice.

## IV.   CONCLUSION

For the reasons set forth above, it is hereby **RECOMMENDED** that Defendant's Partial Motion to Dismiss (ECF No. 38) be **GRANTED**, that Counts 1, 2, and 3 be **DISMISSED WITH PREJUDICE**, and that Claim 4 be **DISMISSED WITHOUT PREJUDICE**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge,** *Thomas v. Arn***, 474 U.S. 140, 148–53 (1985), and also waives appellate review of both factual and legal questions.**

*Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412–13 (10th Cir. 1996).

Dated at Denver, Colorado this 25th day of August, 2025.

_____
N. Reid Neureiter
United States Magistrate Judge

16