IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 24-cv-02624-PAB-NRN

MARIA J. PRKIC,

　　　Plaintiff,

v.

SEZZLE, INC.,

　　　Defendant.

---

## ORDER

---

This matter comes before the Court on the Report and Recommendation on Defendant's Partial Motion to Dismiss (ECF No. 38) [Docket No. 96]. The magistrate judge recommends that the Court grant Defendant's Partial Motion to Dismiss [Docket No. 38] filed by defendant Sezzle, Inc. ("Sezzle").

## I.  BACKGROUND

### A.  Factual Background[1]

Sezzle is a publicly traded financial technology company headquartered in Minneapolis, Minnesota. Docket No. 1-1 at 2, ¶ 11. On February 24, 2023, Sezzle hired plaintiff Maria Prkic, who resided in Colorado during her employment, for a position as a paralegal. *Id.* at 1-2, ¶¶ 5, 14-15. After Ms. Prkic began working for Sezzle, she was offered a position as an Anti-Money Laundering ("AML") Officer because of her twenty-five years of experience working in banks and law firms in

---

[1] The following facts are taken from the complaint, Docket No. 1, and are presumed true for the purpose of ruling on defendant's motion to dismiss unless noted otherwise.

"Financial Crimes like roles."  *Id.*, ¶ 15.  An AML Officer is responsible for "[t]raining

employees on AML policies and procedures, and how to identify and report suspicious

activity," "[i]dentifying, assessing, monitoring, and managing risks associated with

money laundering, terrorist financing, and child and human trafficking," "[c]onducting

internal audits and ensuring compliance with financial regulations and personal data

requirements," "[r]eporting suspicious transactions or financial crimes to law

enforcement agencies," "[w]orking with law enforcement officials and financial

institutions when there are signs of organizational financial crime," "[d]eveloping,

updating, and implementing policies and procedures that address key issues, risk

appetites, and acceptable behaviors," "[a]ssisting with the implementation of an

organization's AML program," and "[a]rranging inspections from third-party

organizations and fixing any oversights in the program."[2]  *Id.* at 32.  Sezzle's board of

directors approved Ms. Prkic's appointment to the role of AML Officer on April 10, 2023.

*Id.* at 2-3, ¶ 18.

　　After beginning work as an AML officer, Ms. Prkic began "reporting what she

perceived to be violations of relevant financial crimes laws and regulations."  *Id.* at 3,

¶ 20.  Specifically, Ms. Prkic "flagged" that Sezzle utilized an algorithm that failed to

---

[2] Ms. Prkic attaches a copy of the AML Officer job description to her complaint.  *See*
Docket No. 1-1 at 32.  Generally, a court should not consider any evidence beyond the
pleadings when ruling on a 12(b)(6) motion, *Waller v. City & Cnty. of Denver*, 932 F.3d
1277, 1282 (10th Cir. 2019), and if the court considers matters outside the complaint,
"the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ.
P. 12(d).  However, the Tenth Circuit has recognized a "limited exception" to this rule:
the "district court may consider documents referred to in the complaint if the documents
are central to the plaintiff's claim and the parties do not dispute the documents'
authenticity."  *Waller*, 932 F.3d at 1282.  Sezzle does not challenge the authenticity of
the job description, *see* Docket No. 38, and the Court finds that the job description is
central to Ms. Prkic's pro se complaint.

accurately report when consumer borrowers had paid their balance to Sezzle and, as a result, such borrowers were automatically reported to collection agencies. *Id.*, ¶ 21. Ms. Prkic also complained that her pay had not increased, despite being promised a pay raise for her promotion to AML Officer, and that her official title had not changed. *Id.*, ¶ 22. Ms. Prkic told Sezzle that failing to increase her pay or change her title "was a violation of regulations imposed by bank sponsors and, consequently, a violation of broader financial regulations." *Id.* Specifically, she told Sezzle's Senior Vice President of Corporate Development that "the inconsistency with her title was a potential violation of bank sponsorship regulations and that the bank sponsors Sezzle was dealing with required proof that she was the official AML Officer." *Id.*, ¶ 23.

On April 26, 2024, Sezzle's Interim General Counsel, Kerissa Hollis, told Ms. Prkic that her AML Officer duties were being reassigned. *Id.* at 4, ¶ 24. However, Sezzle continued to hold Ms. Prkic out as the AML Officer. *Id.*, ¶ 25. Ms. Prkic "opted out of continuing to perform AML Officer duties as a Paralegal because she believed it was unfair and a potential violation of multiple requirements and regulations." *Id.*, ¶ 27. Sezzle terminated Ms. Prkic on May 28, 2024. *Id.*, ¶ 28.

### B. Procedural Background

On September 23, 2024, Ms. Prkic filed suit against Sezzle. Docket No. 1. Ms. Prkic brings five claims for relief – retaliation under the Sarbanes-Oxley Act ("SOX Act"), 18 U.S.C. § 1514A(a)(1)(C); retaliation under the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank Act"), 15 U.S.C. § 78u-6(h)(1)(A); violation of the Colorado Equal Pay for Equal Work Act ("EPEWA"), Colo. Rev. Stat. §§ 8-5-101 et

seq.; wrongful termination in violation of public policy; and breach of contract.  Docket
No. 1-1 at 4-8, ¶¶ 33-64.

On January 22, 2025, Sezzle filed a motion to dismiss all of Ms. Prkic's claims
except her breach of contract claim.  Docket No. 38.  Ms. Prkic responded, Docket No.
48, and Sezzle replied.  Docket No. 52.  On August 25, 2025, Magistrate Judge N. Reid
Neureiter issued a recommendation that the Court grant Sezzle's partial motion to
dismiss.  Docket No. 96.  On September 2, 2025, Ms. Prkic filed an objection to Judge
Neureiter's recommendation.  Docket No. 97.  Sezzle filed a response on September
16, 2025.  Docket No. 101.

## II.  LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege
enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . .
plausible on its face."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012)
(citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The 'plausibility' standard
requires that relief must plausibly follow from the facts alleged, not that the facts
themselves be plausible."  *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163,
1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)).
Generally, "[s]pecific facts are not necessary; the statement need only 'give the
defendant fair notice of what the claim is and the grounds upon which it rests.'"
*Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at
555) (alterations omitted).  However, a plaintiff still must provide "supporting factual
averments" with her allegations.  *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir.
2009) ("[C]onclusory allegations without supporting factual averments are insufficient to

state a claim on which relief can be based." (citation omitted)).  Otherwise, a court need

not accept conclusory allegations.  *Moffet v. Halliburton Energy Servs.*, *Inc.*, 291 F.3d

1227, 1232 (10th Cir. 2002).  "[W]here the well-pleaded facts do not permit the court to

infer more than the mere possibility of misconduct, the complaint has alleged – but it

has not shown – that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662,

679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A

plaintiff must nudge [his] claims across the line from conceivable to plausible in order to

survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)).  If a complaint's

allegations are "so general that they encompass a wide swath of conduct, much of it

innocent," then plaintiff has not stated a plausible claim.  *Khalik*, 671 F.3d at 1191

(quotations omitted).  Thus, even though modern rules of pleading are somewhat

forgiving, "a complaint still must contain either direct or inferential allegations respecting

all the material elements necessary to sustain a recovery under some viable legal

theory."  *Bryson*, 534 F.3d at 1286 (alterations omitted).

The Court will "determine de novo any part of the magistrate judge's disposition

that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).  An objection is proper if it

is specific enough to enable the Court "to focus attention on those issues – factual and

legal – that are at the heart of the parties' dispute."  *United States v. 2121 East 30th

Street*, 73 F.3d 1057, 1059 (10th Cir. 1996).  In light of plaintiff's *pro se* status, the Court

construes her filings liberally without serving as her advocate.  *See Hall v. Bellmon*, 935

F.2d 1106, 1110 (10th Cir. 1991).

## III.  ANALYSIS

### A.  Sarbanes-Oxley Act Claim

Judge Neureiter recommends that the Court dismiss Ms. Prkic's SOX Act claim because Ms. Prkic has not exhausted her administrative remedies.  Docket No. 96 at 7. The SOX Act provides

> No company with a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 78*l*) . . . may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee . . . to provide information . . . regarding any conduct which the employee reasonably believes constitutes a violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission [("SEC")], or any provision of Federal law relating to fraud against shareholders, when the information or assistance is provided to . . . a person with supervisory authority over the employee.

18 U.S.C. § 1514A(a)(1)(C).  The SOX Act requires litigants to first file a complaint with the Department of Labor, which is handled by the Occupational Health and Safety Administration ("OSHA"), within 180 days of the violation and before filing suit in federal court.  *See* 18 U.S.C. §§ 1514A(b)(1), (b)(2)(D); *see also Callahan v. HSBC Sec. (USA) Inc.*, 723 F. Supp. 3d 315, 322 (S.D.N.Y. 2024) (citing 29 C.F.R. §§ 1980.103(b)-(d)) (explaining that OSHA is responsible for receiving complaints for SOX Act claims). Judge Neureiter finds that the complaint does not allege that Ms. Prkic filed a complaint with OSHA.  Docket No. 96 at 9.  Judge Neureiter also takes judicial notice of a letter sent from OSHA to defense counsel, in response to defense counsel's Freedom of Information Act ("FOIA") request, stating that Ms. Prkic did not file a charge of retaliation within 180 days following her termination.  *Id.*  Finally, Judge Neureiter states that Ms. Prkic admitted that she did not file such a complaint during a hearing Judge Neureiter held on Sezzle's motion to dismiss.  *Id.*  Because Ms. Prkic was required to file a

complaint with OSHA before filing suit, Judge Neureiter recommends that the Court

dismiss Ms. Prkic's SOX Act claim.[3]  *Id.*

      In her response to the motion to dismiss, Ms. Prkic argues that "Sezzle's reliance

on the administrative exhaustion requirement under 18 U.S.C. § 1514A(b)(1)(A) is

misplaced."  Docket No. 48 at 4.  She claims that, "[w]hile SOX requires employees to

file a complaint with OSHA within 180 days to pursue administrative remedies, courts

have consistently held that this requirement does not bar federal court claims when the

employer had actual notice of the whistleblowing activity."  *Id.*  Ms. Prkic maintains that

she repeatedly made internal reports of alleged SOX Act violations and that therefore

---

[3] The Court notes that Sezzle's motion to dismiss is made pursuant to Rule 12(b)(6), which challenges the sufficiency of a pleading.  Docket No. 38.  However, Sezzle does not argue that Ms. Prkic has failed to plausibly state a claim under the SOX Act.  *See id.* at 3-4.  Instead, it argues that Ms. Prkic failed to comply with a precondition to suit.  *Id.* Courts have held that filing a complaint with OSHA is a jurisdictional prerequisite to suit. *Daly v. Citigroup Inc.*, 939 F.3d 415, 428 (2d Cir. 2019) ("the administrative exhaustion requirements under SOX are jurisdictional and a prerequisite to suit in federal court"); *Parker v. Lithia Motors, Inc.*, 2013 WL 12329161, at *2 (D.N.M. Sept. 9, 2013) ("The exhaustion requirement is jurisdictional."); *but see Gordon-Kelly v. Tatum*, 2024 WL 2043162, at *2 (E.D. Okla. Mar. 25, 2024), *report and recommendation adopted*, 2024 WL 3226003 (E.D. Okla. June 27, 2024) ("Although not jurisdictional, this exhaustion requirement is mandatory and is 'akin to a statute of limitations.'" (quoting *Newman v. Lehman Brothers Holdings Inc.*, 901 F.3d 19, 25 (1st Cir. 2018)).  Accordingly, Sezzle's arguments are more properly made under Rule 12(b)(1).  *See* Fed. R. Civ. P. 12(b)(1) ("a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction").  Nevertheless, Sezzle's motion raises the issue of the Court's jurisdiction over Ms. Prkic's SOX Act claim, and Ms. Prkic does not object to Judge Neureiter considering the issue.  *See* Docket No. 97.  Moreover, it is appropriate for Judge Neureiter to determine whether the Court has jurisdiction because, "[i]n every case and at every stage of the proceeding, a federal court must satisfy itself as to its own jurisdiction, even if doing so requires *sua sponte* action."  *Travelers Com. Ins. Co. v. Hernandez*, No. 24-cv-01282-PAB, 2024 WL 2245173, at *1 (D. Colo. May 17, 2024) (citing *Citizens Concerned for Separation of Church & State v. City & Cnty. of Denver*, 628 F.2d 1289, 1297 (10th Cir. 1980)).  Ms. Prkic also does not object to Judge Neureiter considering the FOIA response from OSHA or her statements at the hearing to determine whether the Court has jurisdiction over her claim.

the administrative exhaustion requirement has been satisfied. *Id.* at 4-5. Judge

Neureiter rejects Ms. Prkic's argument that "the SOX Act's administrative exhaustion

requirement does not bar federal court claims when the employer had actual notice of

the whistleblowing activity." Docket No. 96 at 8 (citation and quotations omitted). Judge

Neureiter states that Ms. Prkic's argument is unsupported. *Id.* at 8-9. Instead, in each

of the cases Ms. Prkic cites, Judge Neureiter finds that the plaintiff had timely filed an

administrative complaint. *Id.* (citing *Fraser v. Fiduciary Trust Co. Int'l*, 417 F. Supp. 2d

310, 322 (S.D.N.Y. 2006); *Lockheed Martin Corp. v. Admin. Rev. Bd., U.S. Dep't of

Lab.*, 717 F.3d 1121, 1125 (10th Cir. 2013); *Zulfer v. Playboy Enters., Inc.*, 2013 WL

12132075, at *1 (C.D. Cal. Apr. 24, 2013)).

In her objection, Ms. Prkic argues that Judge Neureiter erred because he failed

to consider whether the deadline for filing a complaint with OSHA should be equitably

tolled. Docket No. 97 at 2. The Court finds that it need not consider Ms. Prkic's

arguments regarding equitable tolling because Ms. Prkic failed to raise the issue in her

response to Sezzle's motion to dismiss. *See* Docket No. 48. As Judge Neureiter notes

in his recommendation, Ms. Prkic does "not argue[ ] that the 180-day deadline should

have been tolled." Docket No. 96 at 9. Although Judge Neureiter construes Ms. Prkic's

filings liberally, he was not obligated to consider an argument regarding equitable tolling

that Ms. Prkic did not make. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d

836, 840 (10th Cir. 2005) ("the court cannot take on the responsibility of serving as the

[pro se] litigant's attorney in constructing arguments and searching the record"); *Hall*,

935 F.2d at 1110 ("we do not believe it is the proper function of the district court to

assume the role of advocate for the pro se litigant"). Therefore, the Court finds that

8

Judge Neureiter did not err in declining to consider whether equitable tolling applied to

Ms. Prkic's SOX Act claim.  Moreover, Ms. Prkic may not raise arguments for the first

time in her objection, and she has waived her arguments regarding equitable tolling.

*Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time

in objections to the magistrate judge's recommendation are deemed waived."); *see also*

*Maurer v. Idaho Dep't of Corr.*, 799 F. App'x 612, 614 n.1 (10th Cir. 2020)

(unpublished).  Accordingly, the Court will not consider Ms. Prkic's argument that Judge

Neureiter failed to consider whether equitable tolling applies to her SOX claim.

      The Court agrees that the complaint includes no allegations that Ms. Prkic filed

an administrative complaint.  *See* Docket No. 1-1.  Moreover, Ms. Prkic admitted that

she did not file a complaint with OSHA before she filed suit in this case, and a letter

from OSHA confirms this fact.  Docket No. 96 at 9.  Therefore, it is an undisputed fact

that Ms. Prkic did not exhaust her administrative remedies before bringing this action.

Because administrative exhaustion is a precondition to her ability to bring a SOX Act

claim, *Daly*, 939 F.3d at 428, the Court agrees that Ms. Prkic's claim should be

dismissed.[4]  Ms. Prkic makes no other objection to the recommendation that her SOX

Act claim be dismissed, and the Court will overrule her objection.  *See* Docket No. 97 at

2-4.

      Even if the Court were to consider Ms. Prkic's arguments regarding equitable

tolling, the Court would reject them.  "Equitable tolling is a doctrine that permits courts to

extend statutes of limitations on a case-by-case basis in order to prevent inequity."

---

[4] Even if administrative exhaustion is not a jurisdiction issue, courts agree that it is
"mandatory."  *Newman*, 901 F.3d at 25.  Therefore, the result is the same, and Ms.
Prkic's claim should be dismissed.

*Stransky v. HealthONE of Denver, Inc.*, 868 F. Supp. 2d 1178, 1181 (D. Colo. 2012).

"A petitioner is entitled to equitable tolling if [s]he shows (1) that [s]he has been pursuing

h[er] rights diligently, and (2) that some extraordinary circumstance stood in h[er] way

and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal

quotations and citation omitted).  Ms. Prkic argues that Judge Neureiter erred by not

considering evidence she obtained through discovery regarding her attorney's handling

of her claim.  Docket No. 97 at 3.  Ms. Prkic claims that she hired an attorney to initially

handle her claim against Sezzle.  *Id.* at 2-3.  She states that her attorney failed to advise

her that she was required to file a complaint with OSHA before filing suit.  *Id.*

Furthermore, she claims that she was misled by the SEC because it informed Ms. Prkic

that she was not required to file a complaint with the SEC before filing suit.  *Id.*  Finally,

she claims that she was misled by Sezzle's employee handbook, which does not

instruct employees to file complaints with OSHA regarding potential SOX Act violations.

*Id.*  Ms. Prkic argues that extraordinary circumstances therefore prevented her from

timely filing a complaint with OSHA and that the deadline to file a complaint should be

equitably tolled.  *Id.*

        Ms. Prkic fails to explain how equitable tolling would save her SOX Act claim.

*See id.* at 2-4.  Judge Neureiter found that Ms. Prkic did not file a complaint with OSHA,

not that Ms. Prkic filed an untimely complaint.  *See* Docket No. 96 at 8-9.  Thus, even if

equitable tolling extends the deadline for Ms. Prkic to file an administrative complaint, it

does not affect the requirement that Ms. Prkic exhaust her administrative remedies

before filing suit.  *See* 18 U.S.C. § 1514A(b)(1).

Ms. Prkic also provides no support for the proposition that equitable tolling allows Ms. Prkic to circumvent the administrative exhaustion requirement by exhausting her administrative remedies after filing suit.  Instead, when administrative exhaustion is a prerequisite to suit, courts have routinely held that post-filing exhaustion is insufficient. *See*, *e.g.*, *Duplan v. Harper*, 188 F.3d 1195, 1199 (10th Cir. 1999) ("Allowing claimants generally to bring suit under the [Federal Tort Claims Act ("FTCA")] before exhausting their administrative remedies and to cure the jurisdictional defect by filing an amended complaint would render the exhaustion requirement meaningless and impose an unnecessary burden on the judicial system."); *Bray v. Bon Secours Mercy Health, Inc.*, 97 F.4th 403, 417 (6th Cir. 2024) (under the FTCA "a plaintiff who fails to comply can't cure that failure by exhausting administrative remedies while the suit is pending: the claim must be reasserted in a new action" (citation, quotation, and alterations omitted))); *Lockett v. DeRose*, 355 F. App'x 582, 584 (3d Cir. 2009) (unpublished) ("Courts have recognized that an inmate cannot satisfy the [Prison Litigation Reform Act] by exhausting administrative remedies after filing suit." (citing *Johnson v. Jones,* 340 F.3d 624, 627 (8th Cir. 2003) ("[I]n considering motions to dismiss for failure to exhaust under section 1997e(a), the district court must look to the time of filing, not the time the district court is rendering its decision, to determine if exhaustion has occurred.  If exhaustion was not completed at the time of filing, dismissal is mandatory.")); *see also* 18 U.S.C. § 1514A(b)(1)(A) ("A person who alleges discharge or other discrimination by any person in violation of subsection (a) may seek relief under subsection (c), by . . . *filing a complaint with the Secretary of Labor* . . . ." (emphasis added)).

Moreover, even if the Court were to find that Ms. Prkic may belatedly cure her failure to exhaust her administrative remedies, Ms. Prkic's objection does not indicate that she has exhausted her administrative remedies.  Instead, Ms. Prkic's objection states that she has appealed OSHA's decision to the Administrative Review Board and that her appeal is pending.  *See* Docket No. 97 at 3 ("Plaintiff's ARB appeal and pending Motion for Admission of New Evidence (filed August 1, 2025, ARB Case No. 2025-0074) present a collusion scheme by Whitcomb & Selinsky, Fisher Phillips, and Sezzle, initiated July 1, 2024, to ensure she missed the OSHA deadline."); *see also Lawson v. FMR LLC*, 571 U.S. 429, 435–37 (2014) ("OSHA's order may be appealed to an administrative law judge, and then to DOL's Administrative Review Board (ARB)." (citing 29 CFR §§ 1980.104–10 (2011)).

Finally, the Court finds Ms. Prkic has not shown that extraordinary circumstances prevented her from filing a complaint with OSHA before filing suit.  Each of Ms. Prkic's arguments is premised on the idea no one told her that filing a complaint with OSHA was a precondition to suit.  Docket No. 97 at 2-4.  However, it is ultimately Ms. Prkic's responsibility to ensure that she complied with the legal requirements of the SOX Act before filing suit.  *See Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) ("it is well established that ignorance of the law, even for . . . pro se petitioner[s], generally does not excuse prompt filing" (citation and quotation omitted)).  Although Ms. Prkic alleges that her attorney failed to advise her of the requirement to file an administrative complaint, "attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the extraordinary circumstances required for equitable tolling." *Fleming v. Evans*, 481 F.3d 1249, 1256 (10th Cir. 2007) (quoting *Merritt v. Blaine*, 326

F.3d 157, 169 (3d Cir. 2003)).  Instead, equitable tolling "may be applied when the
attorney misrepresents a filing deadline in a particularly egregious way, or deliberately
hides information from his client in order to cover up his misdeeds.  But a miscalculation
or misinterpretation of the statutory provision regarding the limitation period, with
nothing more, does not rise to the level of misconduct that would justify equitable
tolling." *United States v. Robinson*, 762 F. App'x 571, 578 (10th Cir. 2019)
(unpublished) (quoting *Dominguez v. Hatch*, 440 F. App'x 624, 626 (10th Cir. 2011)
(unpublished)).  Here, Ms. Prkic argues that she was "misled by counsel" and that her
attorney was "[d]eliberately silen[t]."  Docket No. 97 at 3.  However, without further
details about how Ms. Prkic's attorney misled her, or under what circumstances her
attorney failed to communicate the OSHA filing requirement, Ms. Prkic has not shown
that her attorney's conduct was "particularly egregious."  *Robinson*, 762 F. App'x at 578.

Furthermore, although extraordinary circumstances may exist "when the
defendant's conduct rises to the level of active deception," *Impact Energy Res., LLC v.
Salazar*, 693 F.3d 1239, 1246 (10th Cir. 2012), Ms. Prkic's claims that Sezzle's
employee handbook did not instruct employees to file complaints with OSHA does not
rise to level of active deception.  Neither do her claims regarding the SEC, which gave
her accurate information that she was not required to file a complaint with the SEC, as
opposed to OSHA, before filing suit.  Accordingly, even if the Court were to consider
Ms. Prkic's arguments regarding equitable tolling, Ms. Prkic has not shown that
equitable tolling applies.  For these additional reasons, the Court overrules Ms. Prkic's
objection.

### B. Dodd-Frank Act Claim

Judge Neureiter recommends that the Court dismiss Ms. Prkic's Dodd-Frank Act claim because Ms. Prkic fails to allege that she provided information to the SEC during her employment at Sezzle.  Docket No. 96 at 9-10.  In the recommendation, Judge Neureiter notes that the Dodd-Frank Act includes an anti-retaliation provision, which states

> No employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower-- (i) in providing information to the [SEC] in accordance with this section; (ii) in initiating, testifying in, or assisting in any investigation or judicial or administrative action of the [SEC] based upon or related to such information; or (iii) in making disclosures that are required or protected under the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 et seq.), this chapter, including section 78j-1(m) of this title, section 1513(e) of Title 18, and any other law, rule, or regulation subject to the jurisdiction of the [SEC].

*Id.* at 10 (quoting 15 U.S.C. § 78u-6(h)(1)(A)).  A whistleblower is defined as "any individual who provides . . . information relating to a violation of the securities laws to the [SEC], in a manner established, by rule or regulation, by the [SEC]."  15 U.S.C. § 78u-6(a)(6).  Therefore, the elements of Ms. Prkic's claim for retaliation under the Dodd Frank Act are: "(1) [s]he reported an alleged violation to the SEC . . . (2) [s]he was retaliated against for reporting the alleged violation; (3) the disclosure of the alleged violation was made pursuant to a rule, law, or regulation subject to the SEC's jurisdiction; and, (4) the disclosure was required or protected by that rule, law, or regulation within the SEC's jurisdiction."  *Azim v. Tortoise Cap. Advisors, LLC*, 2015 WL 6802540, at *12 (D. Kan. Nov. 5, 2015), *aff'd in part*, 718 F. App'x 600 (10th Cir. 2017) (unpublished).  Judge Neureiter explains that, in *Digital Realty Tr., Inc. v. Somers*, 583 U.S. 149, 153 (2018), the Supreme Court confirmed that the Dodd-Frank Act's anti-

14

retaliation provision does not "extend to an individual who has not reported a violation of the securities laws to the SEC." Docket No. 96 at 10. Judge Neureiter finds that Ms. Prkic does not allege that she filed a complaint with the SEC while she was employed at Sezzle. *Id.* at 11. He also notes that, in her response, Ms. Prkic admits that she first contacted the SEC after she was terminated. *Id.* Because Ms. Prkic does not allege that she provided information to the SEC during her employment at Sezzle, Judge Neureiter recommends that the Court dismiss her Dodd-Frank Act claim with prejudice. *Id.*

Judge Neureiter rejects Ms. Prkic's argument that "courts have recognized exceptions where internal reporting is sufficient, particularly for compliance professionals." *Id.* at 10-11. Although he acknowledges that some courts held that internal reporting was sufficient to gain whistleblower protection under the Dodd-Frank Act, Judge Neureiter explains that these cases were decided before the Supreme Court's ruling in *Digital Realty*, which conclusively established that internal reporting was insufficient. *Id.* at 11; *see also Digital Realty*, 583 U.S. at 163 ("Somers did not provide information 'to the Commission' before his termination, § 78u–6(a)(6), so he did not qualify as a 'whistleblower' at the time of the alleged retaliation.").

Ms. Prkic objects to the recommendation on the basis that "her internal reporting as an AML Officer and post-termination SEC filing on April 3, 2025, qualify her as a whistleblower under Dodd-Frank, and equitable tolling applies." Docket No. 97 at 5. Ms. Prkic claims that "[h]er April 3, 2025, SEC filing, though post-termination, supports her whistleblower status, as *Digital Realty* does not preclude retroactive filings when delayed by extraordinary circumstances." *Id.* The Court construes Ms. Prkic's

15

argument to be that equitable tolling applies to her Dodd-Frank Act claim.  It does not.

Judge Neureiter does not recommend that Ms. Prkic's Dodd-Frank Act claim be

dismissed because Ms. Prkic failed to file her claim within the statute of limitations or

because she missed a deadline to submit information to the SEC.  *See* Docket No. 96

at 10-11.  Instead, Ms. Prkic's claim fails because she does not allege that actions she

took and which are protected by the act, namely, providing information to the SEC,

caused Sezzle to terminate Ms. Prkic.  Put differently, Ms. Prkic has not plausibly

alleged her retaliation claim because Sezzle did not retaliate against Ms. Prkic for

actions she took after she was terminated.  *See McAllister v. Queens Borough Pub.*

*Libr.*, 309 F. App'x 457, 459 (2d Cir. 2009) (unpublished) ("McAllister failed to state a

claim for retaliation because the only adverse employment action by his employer that

McAllister alleges is his termination, which occurred before his protected activity, filing a

charge with the administrative agency."); *Watkins v. Texas Dep't of Crim. Just.*, 269 F.

App'x 457, 461 (5th Cir. 2008) (unpublished) ("many of the actions Watkins complains

of cannot be retaliatory because they predate his participation in any protected activity");

*Byrnes v. St. Catherine Hosp.*, 2024 WL 4063476, at *6 n.5 (D. Kan. Sept. 5, 2024) ("It

is axiomatic that a plaintiff engage in statutorily protected activity before an employer

can retaliate against her for engaging in statutorily protected activity." (quoting *Durkin v.*

*City of Chicago*, 341 F.3d 606, 614–15 (7th Cir. 2003))).  Therefore, Ms. Prkic's

arguments regarding equitable tolling are not a basis to reject Judge Nuerieter's

recommendation.

        Ms. Prkic argues that Judge Neureiter "failed to consider *Wadler v. Bio-Rad*

*Labs., Inc.*, 916 F.3d 1176, 1187 (9th Cir. 2019), which recognizes that compliance

officers' internal reporting can align with Dodd-Frank protections when tied to SOX-
protected activities, as here."  Docket No. 97 at 5 (emphasis omitted).  The Court
construes Ms. Prkic's argument to be that *Wadler* held that internal reporting constitutes
protected activity under the Dodd-Frank Act.  Ms. Prkic did not present her argument
regarding *Wadler* to Judge Neureiter, and therefore her argument is waived.  *Marshall*,
75 F.3d at 1426.  Even if the Court were to consider Ms. Prkic's argument, *Wadler* held
that the Supreme Court's holding in *Digital Realty* barred the plaintiff's Dodd-Frank Act
claim based on purely internal reporting.  *Wadler*, 916 F.3d at 1182 ("Finally, we vacate
with instructions to enter judgment in favor of Bio-Rad as to the Dodd-Frank claim in
light of *Digital Realty Trust, Inc. v. Somers*, —— U.S. ——, 138 S. Ct. 767, 778, 200
L.Ed.2d 15 (2018), which held that Dodd-Frank does not apply to purely internal
reports.").  Because Ms. Prkic fails to demonstrate that Judge Neureiter erred in
concluding that her internal reporting was not protected by the Dodd-Frank Act, the
Court overrules her objection.

### C.  Wrongful Termination Claim

"In general, employment contracts are at-will and either the employer or the
employee may terminate the relationship at any time" without incurring legal liability.
*Rocky Mountain Hosp. & Med. Serv. v. Mariani*, 916 P.2d 519, 523 (Colo. 1996).[5]
However, the Colorado Supreme Court has "recognized an exception to this general
rule in situations where the employer terminated the employment contract in violation of
public policy."  *Castillo v. Denver Health & Hosp. Auth.*, 2022 WL 22926722, at *4 (Colo.

---

[5] Ms. Prkic's wrongful termination claim is alleged as a violation of Colorado law, *see*
Docket No. 1-1 at 7, ¶ 55 (citing *Martin Marrietta Corp. v. Lorez*, 823 P.2d 100 (Colo.
1992)), and therefore the Court applies Colorado law to her claim.

App. Jan. 6, 2022) (citation omitted).  "The public policy exception generally allows 'at-will employees to pursue claims for wrongful discharge if they allege that they were discharged because they either (1) refused to engage in conduct that would violate public policy, or (2) engaged in conduct that is protected or encouraged as a matter of public policy.'"  *Id.* (quoting *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666-67 (Colo. 1999)).  Courts have recognized claims for wrongful termination under the public-policy exception where employees have been terminated for:

> (1) refusal to participate in illegal activity, (2) the employee's refusal to forsake the performance of an important public duty or obligation, (3) the employee's refusal to forego the exercise of a job-related legal right or privilege, (4) the employee's "whistleblowing" activity or other conduct exposing the employer's wrongdoing, and (5) the employee's performance of an act that public policy would encourage under circumstances where retaliatory discharge is supported by evidence of [the] employer's bad faith, malice, or retaliation.

*Id.*

In the motion to dismiss, Sezzle argues that "Colorado law is clear that a separate public policy wrongful discharge claim is not available where the statute at issue provides a wrongful discharge remedy."  Docket No. 38 at 10 (quoting *Miles v. Martin Marietta Corp.*, 861 F. Supp. 73, 74 (D. Colo. 1994); citing *Smith v. Colo. Interstate Gas Co.*, 777 F. Supp. 854, 858 (D. Colo. 1991); *Gamble v. Levitz Furniture Co.*, 759 P.2d 761, 766 (Colo. App. 1988)).  Sezzle argues that Ms. Prkic's wrongful termination claim "is predicated on the same facts underlying her SOX and Dodd-Frank Retaliation Claims."  *Id.*  Because "SOX and Dodd-Frank provide comprehensive remedies relating to wrongful discharge," Sezzle argues that Ms. Prkic's claim for wrongful termination should be dismissed.  *Id.*

In his recommendation, Judge Neureiter agrees. Docket No. 96 at 12-13. He finds that Ms. Prkic's claim for wrongful termination is based on her internal reporting of unlawful practices to Sezzle. *Id.* at 12 ("Here, Plaintiff alleges that she was wrongfully terminated because she reported Sezzle's unlawful practices."). Judge Neureiter concludes that the "alleged unlawful practices that form the basis of her wrongful termination claim also form the basis of her SOX Act and Dodd-Frank Act claims." *Id.* Because Judge Neureiter finds that both the SOX Act and the Dodd-Frank Act have anti-retaliation provisions that provide a wrongful discharge remedy, he recommends that the Court dismiss Ms. Prkic's state law claim for wrongful termination with prejudice. *Id.* at 12-13.

Ms. Prkic argues that Judge Neureiter erred in concluding that the SOX Act and the Dodd-Frank Act provide a remedy for her wrongful discharge. Docket No. 97 at 6-7. Specifically, she maintains that her "termination violated broader public policies beyond SOX and Dodd-Frank, such as bank sponsorship regulations." *Id.* at 7. The Court construes Ms. Prkic's argument to be that her claim for wrongful discharge under Colorado law provides broader protection for Ms. Prkic's whistleblowing activities than the SOX Act and the Dodd-Frank Act. *See id.* As such, Ms. Prkic appears to argue that the basis for her wrongful termination claim is not the same as the basis for her SOX Act and Dodd-Frank Act claims. *See id.*

The Court finds that the Dodd-Frank Act does not provide Ms. Prkic with a remedy for her allegedly wrongful termination. The recommendation determined that Ms. Prkic's internal reporting falls outside the scope of whistleblowing activity protected by the Dodd-Frank Act, Docket No. 96 at 11, which means that the Dodd-Frank Act

cannot provide a remedy for Ms. Prkic's allegedly wrongful termination based on her internal reporting of unlawful practices.

The Court also finds that the SOX Act does not provide a remedy for Ms. Prkic's allegedly wrongful termination based on whistleblowing activities not protected by the SOX Act. The whistleblower protections of the SOX Act are limited. As Sezzle points out in its motion to dismiss, "§ 1514A of SOX protects employees who raise complaints of alleged violations of several specifically-enumerated categories of proscribed conduct, including 18 U.S.C. §§ 1341 (mail fraud), 1342 (wire fraud), 1344 (bank fraud), or 1348 (securities fraud), 'any rule or regulation of the [SEC], or any provision of Federal law relating to fraud against shareholders.'"[6] Docket No. 38 at 5 (quoting 18 U.S.C. § 1514A(a)(1)). In the complaint, Ms. Prkic alleges that she was wrongfully terminated because "she informed Sezzle that it was in violation of financial regulations due to not being licensed in states in which it was operating," "that it was using incorrect and detrimental algorithms that were wrongfully sending their borrowers' paid-up accounts to collections," and that "her title and pay did not reflect her actual status as an AML Officer." Docket No. 1-1 at 7, ¶¶ 57-58. Although Ms. Prkic's allegation that Sezzle was violating "financial regulations" is not precise, when construed liberally, there is no reason to interpret her claim to be that she reported information pertaining only to offenses identified in § 1514A(a)(1). In fact, it is hard to see how Ms. Prkic's

---

[6] In its motion to dismiss, Sezzle argues that Ms. Prkic's SOX Act claim should be dismissed for the additional reason that she fails to allege that she provided information regarding any of the specifically enumerated categories of financial crimes identified in 18. U.S.C. § 1514A(a)(1). Docket No. 38 at 5-10. Judge Neureiter did not reach Sezzle's argument because he found Ms. Prkic's failure to exhaust her administrative remedies dispositive of her SOX Act claim. Docket No. 96 at 7.

allegation that Sezzle was operating without a license in several states constitutes mail

fraud, wire fraud, bank fraud, or a fraud against Sezzle's shareholders.  Similarly,

although Ms. Prkic alleges that Sezzle sending borrowers to collections was "wrongful,"

she does not allege it constituted a crime for which she should receive whistleblower

protection under the SOX Act for reporting.  Finally, Ms. Prkic's allegation that she was

terminated because she complained about not receiving a pay raise and a title change

is an employment matter that is not related to the prohibited conduct identified in

§ 1514A(a)(1).  The complaint alleges that Ms. Prkic was terminated for reporting

several unlawful practices.  The reporting of these practices is beyond the scope of the

protection provided to whistleblowers under the SOX Act.  Accordingly, the Court rejects

Sezzle's argument that "SOX and Dodd-Frank provide comprehensive remedies relating

to [Ms. Prkic's] wrongful discharge."  Docket No. 38 at 10.

Sezzle's only argument that Ms. Prkic's wrongful discharge claim should be

dismissed is that she has statutory remedies under the SOX Act and the Dodd-Frank

Act.  *See id.*  Because these remedies do not protect the specific whistleblower

activities Ms. Prkic identifies in the complaint, and because "[c]laims for wrongful

discharge under the public-policy exception have included termination of employees

for . . . the employee's 'whistleblowing' activity or other conduct exposing the employer's

wrongdoing," *Castillo*, 2022 WL 22926722, at *4, Sezzle has failed to demonstrate that

Ms. Prkic's wrongful termination claim should be dismissed.  Therefore, the Court

rejects the recommendation and will deny that portion of Sezzle's motion to dismiss

seeking to dismiss Ms. Prkic's wrongful termination claim.

### D.  EPEWA Claim

Judge Neureiter recommends that the Court dismiss Ms. Prkic's EPEWA Claim.

Docket No. 96 at 15. He states that, under EPEWA,

> An employer shall not discriminate between employees on the basis of sex . . .
> by paying an employee of one sex a wage rate less than the rate paid to an
> employee of a different sex for *substantially similar* work, regardless of job title,
> based on a composite of skill; effort, which may include consideration of shift
> work; and responsibility.

*Id.* at 13 (quoting Colo. Rev. Stat. § 8-5-102(1)). Judge Neureiter notes that EPEWA

was passed in 2021 and that Colorado courts have not had occasion to apply the act.

*Id.* Therefore, Judge Neureiter considers caselaw under the federal Equal Pay Act

("EPA"), 29 U.S.C. § 206(d), as persuasive authority of the standard for Ms. Prkic's

EPEWA claim. *Id.* Ms. Prkic does not object to Judge Neureiter applying EPA cases to

resolve Sezzle's motion to dismiss. Docket No. 97 at 9 ("The Magistrate's reliance on

federal EPA standards is appropriate.").

Judge Neureiter states that, to plead "an EPA claim, a plaintiff must allege facts

that could plausibly show '(1) she was performing work which was substantially equal to

that of the male employees considering the skills, duties, supervision, effort and

responsibilities of the jobs[,] (2) the conditions where the work was performed were

basically the same[, and] (3) the male employees were paid more under such

circumstances.'" Docket No. 96 at 14 (quoting *Paffe v. Wise Foods, Inc.*, No. 24-cv-

00402-RMR-SBP, 2025 WL 685213, at *2 (D. Colo. Feb. 25, 2025)). Judge Neureiter

determines that, "[a]pplying this holding to the EPEWA context in this case, . . . one of

the requirements for Plaintiff to plead an EPEWA claim is that Plaintiff must allege facts

that could plausibly show that she was performing work which was substantially similar

to that of a male employee." *Id.* Judge Neureiter finds that Ms. Prkic's complaint

alleges only that she was assigned the responsibilities of an AML Officer and that, after Sezzle's male deputy general counsel resigned, a "number of his tasks 'for Legal' were reassigned to Plaintiff in her role as AML Officer." *Id.* at 15. Because Ms. Prkic does not provide details as to what these tasks were, Judge Neureiter concludes that Ms. Prkic has not plausibly alleged that her work as an AML Officer was substantially similar to the work of Sezzle's deputy general counsel. *Id.*

Ms. Prkic objects to Judge Neureiter's conclusion that she has not plausibly alleged that she performed substantially similar work to Sezzle's deputy general counsel. Docket No. 97 at 8. She argues that the complaint "states Plaintiff was reassigned 'tasks for Legal' previously performed by Tim Joyce upon his resignation, including AML Officer duties involving significant skill, effort, and responsibility." *Id.*

The complaint alleges that "[s]ome of Plaintiff's tasks were assigned to her after prior Deputy General Counsel Tim Joyce decided that she was the best person to take over some of his tasks" and that "Tim Joyce resigned from Sezzle and handed over a number of the tasks he had been doing for Legal to Plaintiff." Docket No. 1-1 at 6-7, ¶¶ 50, 51. The Court agrees that Ms. Prkic's allegations lack any specifics as to what tasks were assigned to her by Mr. Joyce. Therefore, Ms. Prkic's complaint does not allege sufficient factual matter that, taken as true, makes her EPEWA claim plausible on its face. Moreover, Ms. Prkic does not allege details regarding other responsibilities she or Mr. Joyce may have had. "It is not sufficient that some aspects of the two jobs were the same. It is the overall job, not its individual segments, that must form the basis of

comparison."[7] *Keller v. Crown Cork & Seal USA, Inc.*, 491 F. App'x 908, 912 (10th Cir. 2012) (unpublished) (quoting *Nulf v. Int'l Paper Co.,* 656 F.2d 553, 560–61 (10th Cir. 1981)); *see also Martin v. Delta Cnty. Mem'l Hosp. Dist.*, No. 19-cv-01339-STV, 2021 WL 6112878, at *9 (D. Colo. Dec. 23, 2021).  Although Ms. Prkic alleges that "a number" of her responsibilities were shared by Mr. Joyce, she does not plausibly allege that Mr. Joyce's responsibilities as deputy general counsel overlapped with Ms. Prkic's responsibilities as an AML Officer such that their jobs entailed substantially similar work. *See* Docket No. 1-1 at 7, ¶ 51.  Therefore, the Court overrules Ms. Prkic's objection that Judge Neureiter erred in concluding that her complaint lacked sufficient detail to plausibly allege her EWEPA claim.

Ms. Prkic argues that Judge Neureiter failed to consider evidence she obtained through discovery regarding male comparators.  Docket No. 97 at 8.  She claims that, "[d]uring discovery, Plaintiff learned that both Tim Joyce and Jonathan,[8] male Deputy General Counsels, performed substantially similar legal and compliance tasks, including oversight of AML functions, yet were paid significantly more than Plaintiff" and that "[d]iscovery also revealed an email from Jack Cohen to Charlie Youakim, dated April 10, 2023, stating Plaintiff was replacing Jonathan in certain AML and legal oversight roles, further confirming substantial similarity."  *Id.*  She asserts that this evidence supports her EPAWA claim.  *Id.*  However, as discussed above, "when considering a Rule

---

[7] Because Ms. Prkic does not object to Judge Neureiter's applying EPA standards to her EPEWA claim, the Court will do the same.  *See McDonald v. People*, 494 P.3d 1123, 1128 (Colo. 2021) ("insofar as the provisions and purposes of our statute parallel those of the federal enactments, federal case law is highly persuasive." (citations and internal quotations omitted)).

[8] Ms. Prkic does not provide Jonathan's full name.  *See* Docket No. 97 at 8.

12(b)(6) motion, a court can only consider the facts alleged in the complaint." *Dobson*,
319 F. App'x at 701.  Therefore, the Court finds that Judge Neureiter did not err by not
considering evidence Ms. Prkic obtained through discovery.  Moreover, the complaint
includes no allegations regarding Jonathan, and the complaint's allegations regarding
Mr. Joyce are insufficient to state a claim.  *See* Docket No. 1-1.  Therefore, the Court
overrules Ms. Prkic's objection and will accept the recommendation to dismiss her
EPEWA claim without prejudice.

In the alternative, Ms. Prkic "requests leave to amend to include discovery
evidence, as the claim is viable."  Docket No. 97 at 9.  Ms. Prkic's request for leave to
amend her complaint is improper because it is included as part of her objection, and not
made as a separate motion.  *See* D.C.COLO.LCivR 7.1(d) ("A motion shall not be
included in a response or reply to the original motion.").  Ms. Prkic has not filed a
separate motion to amend her complaint.  Therefore, the Court will not consider her
request.  Instead, Ms. Prkic may file a motion to amend the allegations in her third claim
for relief on or before October 17, 2025.

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Report and Recommendation on Defendant's Partial Motion
to Dismiss (ECF No. 38) [Docket No. 96] is **ACCEPTED in part** and **REJECTED in
part**.  It is further

**ORDERED** that Plaintiff's Objections to Magistrate Judge's Report and
Recommendation on Defendant's Partial Motion to Dismiss [Docket No. 97] is
**OVERRULED in part** and **SUSTAINED in part**.  It is further

ORDERED that Defendant's Partial Motion to Dismiss [Docket No. 38] is

**GRANTED in part** and **DENIED in part**.  It is further

ORDERED that plaintiff's first and second claims for relief are **DISMISSED with

prejudice**.[9]  It is further

ORDERED that plaintiff's third claim for relief is **DISMISSED without prejudice**.

It is further

ORDERED that plaintiff may file a motion to amend the allegations in the

complaint regarding her third claim for relief on or before October 17, 2025.

DATED September 17, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

---

[9] Judge Neureiter recommends that the Court dismiss Ms. Prkic's first and second claims for relief with prejudice because amendment would be futile.  Docket No. 96 at 9, 13.  Ms. Prkic does not object to the magistrate judge's recommendation that these claims be dismissed with prejudice.  Finding "no clear error" in the magistrate judge's recommendation, the Court will accept the recommendation that dismissal be with prejudice.  *See* Fed. R. Civ. P. 72(b), Advisory Committee Notes.