IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-02624-PAB-NRN

MARIA J. PRKIC,

Plaintiff,

v.

SEZZLE, INC.,

Defendant.

**ORDER ON PLAINTIFF MARIA J. PRKIC'S MOTION TO COMPEL DISCOVERY AND
FOR RELIEF ON PENDING ISSUES FROM JANUARY 5, 2026 HEARING (ECF No.
150) AND MOTION FOR JURY TRIAL UNDER THE FIFTH AND SEVENTH
AMENDMENTS (ECF No. 154)[1]**

**N. REID NEUREITER
United States Magistrate Judge**

This matter comes before the Court on two motions by Plaintiff. First is Plaintiff's

motion, filed February 6, 2026, "To Compel Discovery and for Relief from Pending

Issues from January 5, 2026 Hearing," ECF No. 150. The motion was referred to the

undersigned by Judge Philip A. Brimmer on the date it was filed. ECF No. 151. Second

---

[1] Rule 72(a) of the Federal Rules of Civil Procedure provides that when a pretrial matter not dispositive of a party's claim or defense is referred to a Magistrate Judge to hear and decide, the Magistrate Judge must issue a written order stating the decision. Within fourteen (14) days after service of a copy of this Minute Order, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a). Failure to make any such objection will result in a waiver of the right to appeal the non-dispositive order. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.* 989 F.3d 747, 782 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS,* 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, such as when a "*pro se* litigant has not been informed of the time period for objecting and the consequences of failing to object").

is the Motion for Jury Trial under the Fifth and Seventh Amendments, filed March 9,

2026, ECF No. 154. This motion was referred to the undersigned the same day it was

filed. ECF No. 155.

Both motions complain that, among other things, the case is not moving quickly

enough. Plaintiff asks that the case promptly be set for trial. ECF No. 150 at 3 ("Plaintiff

respectfully inquires why, more than 16 months after filing, core remaining claims.

including EPEWA and wrongful termination, continue without resolution or meaningful

progress under the scheduling order from February 5, 2025."); ECF No. 154 at 1

(describing "Fifth Amendment due process violations from the over 17 months of delay

without trial or resolution").

The Court will take a moment to educate the parties on the reality of litigating a

case to conclusion in the District of Colorado. There are seven active district judges who

serve this Court. There are between 3,500 and 4,000 civil cases filed annually in this

Court. Plaintiff's case was civil matter number 2,624 in the year 2024. There are also

between 250 and 400 felony criminal cases filed in this District every year. Unless a civil

case is assigned to one of the senior district judges (who take a reduced caseload), or

the parties have consented to magistrate judge jurisdiction, any civil case that goes to

trial must be tried before one of the seven active district judges. Every felony criminal

case must be tried before an active district judge. If a criminal defendant decides not to

waive his or her speedy trial rights, the criminal matter will take precedence over the

civil matter. Because of the growing caseload in Colorado, and the associated delays

from having too many cases and not enough judges, the Judicial Conference of the

United States has recommended that Colorado be authorized to have two additional

judgeships. *See* Judiciary Seeks 71 Judgeships to Meet Growing Caseloads (published March 11, 2025), found at https://www.uscourts.gov/data-news/judiciary-news/2025/03/11/judiciary-seeks-71-judgeships-meet-growing-caseloads. But the bill to authorize those additional judgeships has not become law.

All of this—the paucity of judges and the mushrooming number of case filings—means that in 2024, the *average* time from filing to trial for a civil case in this Court before an active district judge was 39 months. *See* 2024 Statistics Report found at http://www.cod.uscourts.gov/AbouttheDistrict/DistrictStatistics.aspx. For a civil rights or an employment case, the average time from filing to trial was 29 months. *Id.* Thus, the fact that this case has gone 17 plus months without trial is neither remarkable nor could it be considered a violation of Plaintiff's rights.

To assist in the processing of the large volume of cases, a district judge will usually refer case scheduling and discovery issues to the magistrate judge assigned to the case. Sometimes dipositive motions, too, are referred to the magistrate judge for a recommendation. Each magistrate judge has a docket of approximately between 350 and 450 pending cases (either on consent or in a referral capacity), and in most of those cases, motions of some kind are filed with regularity. As of the date of this Order, the undersigned has 126 pending motions on his docket and no fewer than 20 pending motions that have been fully argued by the parties and call for a written opinion or recommendation. So, again, the fact that certain motions in this case have been pending for several months is not remarkable and by no means a violation of Plaintiff's rights. *See, e.g.*, *In re Thomas*, 438 Fed. App'x. 137 (3rd Cir. 2011) (holding that a "short time" of about four months since an undecided motion was ready for disposition

3

was not enough to warrant mandamus relief); *Madden v. Myers*, 102 F.3d 74, 79 (3rd

Cir. 1996) (describing delay of eight months in taking action on pending motions as not

yet rising "to the level of a denial of due process"). The undersigned (assisted by his two

very capable law clerks) attempts to get to pending motions with all deliberate speed,

taking into account the needs of the case, including the schedule and complexity of the

issues raised.

One tool the Court uses for effective and efficient case management is to

conduct live hearings or status conferences to address pending issues in a timely way

and allow for reasoned decisions from the bench without having to write a detailed

order. The instant case calls out for a status conference. There are outstanding

discovery requests; Plaintiff has been granted the right to take the deposition of the

CEO of Sezzle; and the original dipositive motion deadline and final pretrial conference

deadlines have been superseded due to certain developments (or lack of

developments) in the case. Hence, the Court has set a status conference for March 19,

2026. ECF No. 158. At that time, the Court will address issues related to the schedule

and any pending discovery disputes. *See, e.g.*, ECF No. 159 (Defendant's Motion for

Extension of Time to Fiel Dispositive Motion). If any party fails to appear at the status

conference, they risk sanctions, including the potential sanction of dismissal of the case

for failure to prosecute.

Plaintiff asks for a prompt trial setting. In terms of the timing of a trial setting,

what will happen in this case is that, after discovery is closed, the parties are entitled to

move for summary judgment. After full briefing on the summary judgment motions (if

any), this Court will conduct a final pretrial conference and issue a final pretrial order.

Usually, the Court does not wait for a decision on summary judgment to conduct the final pretrial conference, and the final pretrial order will reflect the case as it would be tried with all pending claims in the case. On the date of the final pretrial order, Judge Brimmer will typically provide a tentative trial date which, based on past experience, may be set 6–8 months out, depending on Judge Brimmer's schedule. If, between the final pretrial conference and the trial setting, a summary judgment order dispenses with certain claims in the case, the case will proceed to trial on the remaining claims, if any.

With these preliminary explanations out of the way, the Court turns to the specifics of Plaintiff's motions.

## I.  ECF No. 150—Motion to Compel Discovery and Relief on Pending Issues from January 5, 2026 Hearing

1. Plaintiff requests production of a "complete unredacted 60-page Anti-Financial Crimes (AFC) Policy authored by Plaintiff, including all drafts, revisions, comments, tracked changes, internal circulation emails/Slack threads regarding its development, approval and implementation, and all final and interim versions from 2023 through Plaintiff's termination." The Court reserves decision on this issue and will address it after hearing argument at the March 19, 2026 status conference.

2. Plaintiff requests production of "All documents and communications concerning the Serious Algorithm Investigation conducted in Summer 2023." The Court reserves decision on this issue and will address it after hearing argument at the March 19, 2026 status conference.

3. Unedited Video Deposition. Plaintiff claims that there are portions of her deposition which were video-taped but not produced to her. Specifically, she

claims that there were portions when defense counsel "raised her voice and yelled at Plaintiff." Plaintiff says that "[t]hese omitted segments are relevant to demonstrate counsel's conduct and credibility issues for trial presentation to the jury." The Court will not require any additional production of any deposition video. The Court presumes that the certified court reporter produced to both sides whatever exists of what transpired on the record. To the extent something happened that was not "on the record," then it would not have been recorded and would not have been part of the deposition transcript. The Court also finds that whatever may have happened off the record at the deposition is not relevant to the substantive issues in this case. Also, this deposition occurred in the Court's jury room, specifically because, in advance, Plaintiff had raised fears of misconduct or intimidation by counsel. The Court was available to provide immediate relief to the extent Plaintiff felt something untoward was happening during the deposition. But no relief was sought at the time of the deposition. To the extent Plaintiff now seeks an order compelling production of additional deposition record or records, that request is **DENIED**.

4. "Delays in Core Claims." To the extent Plaintiff asks why this case is taking so long to decide, the answer is provided above.

5. CEO Subpoena. This issue has been addressed in the Court's Order of March 9, 2026, ECF No. 156.

6. Mitigation of Damages and Financial Hardship. Plaintiff asks that the Court allow her to participate in any hearing remotely via telephone. This request is

**GRANTED** and Plaintiff may participate in any future hearings before this Judge by phone or video-teleconference. If hearings are set before Judge Brimmer, Plaintiff will need to seek specific permission from Judge Brimmer to appear remotely.

## II. ECF No. 154—Motion for Jury trial under the fifth and Seventh Amendments

1. As to the new issues raised in ECF No. 154, Plaintiff first asks that the Court take judicial notice of a decision by the Administrative Review Board of the United States Department of Labor—Arb Case No. 2025-0074, issued March 6, 2026. *See* ECF No. 154-1. That decision was made at the administrative appeals level and found that, while Plaintiff had not timely filed her complaint with the Occupational Safety and Health Administration ("OSHA") alleging whistleblower retaliation under the Sarbanes-Oxley Act, she had met the requirements for equitable tolling because she first had timely raised the statutory claim at issue in this Court—which was the wrong forum. The Court can certainly take judicial notice of the decision by the Administrative Review Board, but it is not clear what the legal import of that decision is with respect to *this* case. Thus, the request to take judicial notice is **GRANTED**. But the Court will require additional briefing by the parties on whether Plaintiff has exhausted her administrative remedies. The Administrative Review Board found that equitable tolling should apply to find that Plaintiff claim should be deemed timely filed at the OSHA level. It is not clear what that means from the perspective of whether Plaintiff has exhausted her administrative remedies for purposes of filing a case in this Court. As explained in *Daly v.*

*Citigroup, Inc.*, 939 F.3d 415 (2nd Cir. 2019), there are two ways to seek a remedy for a SOX whistle-blower violation in federal court. By statute, when OSHA fails to issue a final decision within 180 days of the filing of an administrative complaint, and "there is no showing that such delay is due to the bad faith of the claimant," 18 U.S.C. § 1514A(b)(1)(B), a party may seek relief by "bringing an action at law or equity for de novo review in the appropriate district court of the United States." *Id.* And second, review in federal court is possible if the party seeks review of a final order from OSHA within 60 days in "the United States Court of Appeals for the circuit in which the violation allegedly occurred or the circuit in which the complainant resided on the date of the violation," in which case the federal court's review on appeal is limited to the administrative record. *Daly*, 939 F.3d at 427. "In either instance, however, for the federal court to have jurisdiction over the claim, the claimant must first commence an action with an adjudicating administrative agency. And the nature of a federal court's subsequent review, if any, is expressly set forth by statute and agency regulation, including the standard of review (de novo) and the substantive content that may be reviewed (the administrative record)." *Id.* at 428. The Court will need further clarification from the parties as to the impact of the Administrative Review Board's decision on this lawsuit.

2. Seventh Amendment Right to Jury Trial. Plaintiff "demands a jury trial now without further delay." This request is **DENIED without prejudice**. As

explained above, Judge Brimmer will set the date for trial in this case when the final pretrial order is issued.

3.  Claim that 17-month delay violates due process. As described above, there is nothing unusual about a 17-month passage of time between the filing of a civil lawsuit in this Court and trial. Indeed, 24–36 months between filing and trial is the norm.

4.  Complaints about stalking and other alleged misbehavior. The Court has observed no inappropriate conduct by Sezzle or its counsel in the defense of this case. To the extent Plaintiff believes something untoward is going on outside of court, she should feel free to contact local law enforcement, which she apparently has.

5.  Plaintiff asks for jury sequestration during trial to "prevent tampering given documented retaliation." This request is **DENIED without prejudice**. This is a request more appropriately directed to Judge Brimmer at the trial preparation conference, closer in time to the beginning of trial when there will be more detailed discussion of the specific mechanics of how the trial will be conducted. The request is premature at this time.

It is so **ORDERED**.

Dated at Denver, Colorado this 16th Day of March 2026

N. Reid Neureiter
United States Magistrate Judge

9