IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-02624-PAB-NRN

MARIA J. PRKIC,

Plaintiff,

v.

SEZZLE, INC.,

Defendant.

---

### REPORT AND RECOMMENDATION ON
### DEFENDANT'S PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
### COMPLAINT (ECF No. 125)

---

**N. REID NEUREITER**
**United States Magistrate Judge**

This matter is before the Court pursuant to an Order issued by Judge Philip A. Brimmer, ECF No. 126, referring Defendant Sezzle, Inc.'s ("Defendant" or "Sezzle") Partial Motion to Dismiss Plaintiff's First Amended Complaint ("Motion"), ECF No. 125. Plaintiff Maria J. Prkic ("Plaintiff" or "Ms. Prkic") filed a response, ECF No. 138, and Defendant filed a reply, ECF No. 141. On January 5, 2026, the Court held a hearing on the motion. ECF No. 145. The Court has taken judicial notice of the case file and considered the applicable federal and state statutes and case law. For the reasons discussed below, it is hereby **RECOMMENDED** that Sezzle's Partial Motion to Dismiss Plaintiff's First Amended Complaint, ECF No. 125, be **GRANTED in part and DENIED in part**.

1

I.    **BACKGROUND**[1]

Sezzle, a financial technology company, hired Plaintiff as a paralegal on February 24, 2023, and she began work on March 8, 2023. ECF No. 114 at 14. Plaintiff has extensive experience working in banks and law firms. *Id.* at 2. Based on this experience, Jack Cohen (Plaintiff's supervisor) asked her if she would be willing to serve as an Anti-Money Laundering ("AML") Officer for the legal team, which would be accompanied by a pay raise and title change. On April 20, 2023, the Sezzle Board of Directors approved Plaintiff's appointment as an AML Officer, and she assumed her new job duties.

An AML Officer is responsible for "ensuring that an organization complies with anti-money laundering regulations and preventing financial crimes." *Id.* at 36. Duties include "[t]raining employees on AML policies and procedures, and how to identify and report suspicious activity," "[i]dentifying, assessing, monitoring, and managing risks associated with money laundering, terrorist financing, and child and human trafficking," "[c]onducting internal audits and ensuring compliance with financial regulations and personal data requirements," "[r]eporting suspicious transactions or financial crimes to law enforcement agencies," "[w]orking with law enforcement officials and financial institutions when there are signs of organizational financial crime," "[d]eveloping, updating, and implementing policies and procedures that address key issues, risk

---

[1] Unless otherwise noted, all factual allegations are taken from the First Amended Complaint ("FAC"), ECF No. 114, and are presumed to be true for the purposes of the Motion. Any citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination. Additionally, the Court considers documents attached to the FAC. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).

appetites, and acceptable behaviors," "[a]ssisting with the implementation of an organization's AML program," and "[a]rranging inspections from third-party organizations and fixing any oversights in the program." *Id.*

After assuming the AML Officer position, Plaintiff noticed that "Sezzle was utilizing an algorithm that failed to report when a consumer borrower had paid their balance to Sezzle and, due to that failure, the algorithm automatically reported consumer borrowers to the collection agencies even if they were current with their Sezzle repayment obligations." *Id.* at 3. Plaintiff alleges that she "flagged" this issue but does not allege what "flagged" means or who she spoke to about the issue.

As of April 8, 2024, Plaintiff had not received a pay increase or change in title. In a Slack message, she told Lee Brading (Sezzle's Chartered Financial Analysis and Senior VP of Corporate Development, Investor Relations, and Operational Excellence) "that the inconsistency with her title was a potential violation of bank sponsorship regulations and that the bank sponsors Sezzle was dealing with required proof that she was the official AML Officer." *Id.* at 4.

Shortly thereafter, on April 26, 2024, Kerissa Hollis (Sezzle Interim General Counsel) told Plaintiff that her AML Officer duties had been reassigned to another employee. *Id.* Plaintiff alleges that, despite this change, "Defendant expected Plaintiff to continue performing AML Officer duties under a title inconsistent with those duties (e.g., Paralegal) and in violation of bank sponsorship regulations." *Id.* Plaintiff believes that "Sezzle continued to hold Plaintiff out as the AML Officer and numerous members of Plaintiff's team and external partners continued to believe they could reach out to her to assist with duties associated with an AML Officer." *Id.*

3

On May 28, 2024, Sezzle terminated Plaintiff's employment. Plaintiff believes that she was terminated for complaining that she had not received the pay increase and title change in exchange for assuming AML Officer job duties, and for reporting to Sezzle the wrongful practices that she had observed.

In her original complaint, ECF No, 1, Plaintiff alleged five causes of action against Sezzle, including (1) retaliation in violation of the Sarbanes-Oxley Act ("SOX"); (2) retaliation in violation of the Dodd-Frank Act ("Dodd-Frank"); (3) retaliation in violation of the Colorado Equal Pay for Equal Work Act ("EPEWA"); (4) wrongful termination in violation of public policy; and (5) breach of contract. Sezzle filed a Partial Motion to Dismiss, ECF No. 38, seeking to dismiss counts 1–4 of the original complaint. In an order dated September 17, 2025, ECF No. 102, Judge Brimmer granted Sezzle's Partial Motion to Dismiss in part, dismissing Plaintiff's SOX and Dodd-Frank retaliation claims with prejudice, dismissing her EPEWA retaliation claim without prejudice, and denying dismissal of her public policy wrongful termination claim. Regarding the EPEWA retaliation claim, Judge Brimmer granted Plaintiff leave to amend her complaint to address the insufficient factual allegations related to the retaliation claim. *Id.* at 23. Sezzle's arguments for dismissal of Plaintiff's public policy wrongful termination claim were premised on the pre-emptive effect of the statutory remedies available to her under SOX and Dodd-Frank. However, Judge Brimmer found that that the original complaint included allegations outside the scope of the two acts and denied dismissal. *Id.* at 19–20.

4

Plaintiff now brings four[2] claims against Sezzle.

In Count I, Plaintiff alleges that Sezzle violated the EPEWA because she was paid "far less" than former Sezzle Deputy General Counsel Tim Joyce and Jonathan [Last Name Unknown]. Under Count I, Plaintiff also alleges that Sezzle violated the EPEWA by retaliating against her for exercising her rights under the statute.

In Count II, Plaintiff alleges that Sezzle wrongfully terminated her in violation of public policy.

In Count III, Plaintiff brings a breach of contract claim based on Sezzle's failure to change Plaintiff's title and increase her pay after she became AML Officer.

Sezzle now moves to dismiss Counts I and II for failure to state a claim under Fed. R. Civ. P. 12(b)(6). The breach of contract claim is not challenged at this stage.

## II.     LEGAL STANDARDS

### a.  Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). "A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935

---

[2] Although the FAC contains only three counts, Plaintiff combines two separate EPEWA claims in Count I.

F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679–81. Second, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679.

### b. Pro Se Plaintiff

The Court must construe the FAC and other papers filed by Plaintiff liberally because she is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Hall*, 935 F.2d at 1110. However, the Court should not be an advocate for a pro se litigant. *See Hall*, 935 F.2d at 1110; *Craig v. McCollum*, 590 F. App'x 723, 726 (10th Cir. 2014) ("Our liberal construction of pro se petitions does not exempt them from the rules of procedure binding the petitions of other litigants.") (citation omitted).

### III.   ANALYSIS

### a. EPEWA Discrimination Claim

The EPEWA provides in relevant part:

An employer shall not discriminate between employees on the basis of sex . . . by paying an employee of one sex a wage rate less than the rate paid

> to an employee of a different sex for *substantially similar* work, regardless of job title, based on a composite of skill; effort, which may include consideration of shift work; and responsibility . . . .

Colo. Rev. Stat. § 8-5-102(1) (emphasis added). Under the law, an employer shall not "[d]ischarge, or in any manner discriminate or retaliate against, an employee for invoking this section on behalf of anyone." *Id.* § 8-5-102(2)(d). The EPEWA became effective on January 1, 2021, and few courts have had occasion to apply it. However, the EPEWA is very similar to the federal Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), which provides in relevant part:

> No employer . . . shall discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for *equal work* on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions . . . .

29 U.S.C. § 206(d) (emphasis added). The Court notes that while the EPA protects employees who perform "equal work" compared to employees of the opposite sex, the EPEWA protects employees who perform "substantially similar work." Nevertheless, where the provisions and purposes of a state statute parallel those of a federal statute, courts consider federal case law to be "highly persuasive." *McDonald v. People*, 494 P.3d 1123, 1128 (Colo. 2021). Accordingly, the Court examines the pleading standards courts apply in EPA cases in order to determine whether Plaintiff has adequately pled an EPEWA claim in this case.

To plead an EPA claim, a plaintiff must allege facts that could plausibly show "'(1) she was performing work which was substantially equal to that of the male employees considering the skills, duties, supervision, effort and responsibilities of the jobs (2) the conditions where the work was performed were basically the same (3) the male

7

employees were paid more under such circumstances.'" *Paffe v. Wise Foods, Inc.*, No. 1:24-cv-00402-RMR-SBP, 2025 WL 685213, at *2 (D. Colo. Feb. 25, 2025) (quoting *Riser v. QEP Energy*, 776 F.3d 1191, 1196 (10th Cir. 2015)); *see also Merrill v. Cintas Corp.*, 941 F. Supp. 1040, 1043 (D. Kan. 1996). "Work is substantially equal if it requires equal responsibility, effort, and skill to that of the allegedly equal position." *Id.* (citing 29 U.S.C. § 206(d)(1)). Applying this holding to the EPEWA context in this case, the Court finds that one of the requirements for Plaintiff to plead an EPEWA claim is that Plaintiff must allege facts that could plausibly show that she was performing work which was substantially similar to that of a male employee. A determination of whether the work was substantially similar is "based on a composite of skill; effort . . . and responsibility." Colo. Rev. Stat. § 8-5-102(1).

Sezzle argues that Plaintiff's EPEWA discrimination claim should be dismissed because she has failed to plausibly plead the existence of a viable comparator. The Court agrees. In her FAC, Plaintiff alleges that there were two proper male comparators—Sezzle's two former Deputy General Counsels, "Tim Joyce and Jonathan [Last Name Unknown]." ECF No. 114 at 5. Meanwhile, Plaintiff was originally hired as a paralegal and was later assigned the responsibilities of an AML Officer.

In support of her argument that Jonathan is a viable male comparator, Plaintiff attached an exhibit to the FAC an email dated April 18, 2023, from Jack Cohen to Charlie Youakim (CEO), which purportedly "confirms that Plaintiff . . . replaced Jonathan [Last Name Unknown] in AML and legal oversight roles at Sezzle, Inc." *Id.* at 63.[3]

---

[3] The Court takes judicial notice of the email because it was attached to the FAC. In evaluating a Rule 12(b)(6) motion to dismiss, the Court may consider documents

However, the email does not support what Plaintiff alleges. Rather, it states that Jonathan would be replaced by two employees—Plaintiff and an employee by the name of "Crystal." *Id.* at 64. Per the email, "Crystal" was to assume the role of "Chief Privacy Officer," and Plaintiff was to assume the role of "Trade and Sanctions Officer"— collectively constituting a replacement for Jonathan. *Id.*

Plaintiff claims that she and the alleged comparators performed several overlapping tasks including "[d]rafting [a] 60-page Anti-Financial Crimes Policy," "[c]onducting internal audits and attempting to correct algorithm errors," "[m]anaging all subpoenas and cease-and-desist notices," "[s]tate registration filings," and "[t]raining staff on AML compliance." *Id.* However, mere allegations of overlapping tasks is insufficient to plead a viable comparator. As Sezzle argues, "it strains credulity to assert a Deputy General Counsel is an appropriate comparator for a paralegal." ECF No. 125 at 6. A paralegal does not have legal decision-making authority for the company or the same educational requirements. The former requires a law degree whereas the latter does not. If it were enough to merely allege overlapping tasks/duties, as Sezzle points out, then judges and their law clerks could be considered appropriate comparators under the EPEWA simply because both perform legal research and draft opinions. "It is the overall job, not its individual segments, that must form the basis of comparison." *Gunther v. Washington Cnty.*, 623 F.2d 1303, 1309 (9th Cir. 1979), *aff'd*, 452 U.S. 161 (1981).

---

incorporated by reference, documents referred to in the complaint that are central to the claims, and matters of which a court may take judicial notice. *Gee*, 627 F.3d at 1186.

Accordingly, the Court cannot find that Plaintiff has adequately pled an EPEWA discrimination claim and recommends that this claim be dismissed.

### b. EPEWA Retaliation Claim

The Court will now turn to Plaintiff's EPEWA retaliation claim. In the "Factual Allegations" portion of the FAC, Plaintiff claims that she "complained that her title and pay had not been changed since taking on AML Officer duties after being appointed to do so." ECF No. 114 at 3. Subsequently, on May 28, 2025, she was terminated. *Id.* at 4. Based on these alleged facts, Plaintiff brings an EPEWA retaliation claim pursuant to Colo. Rev. Stat. § 8-5-102(2).

Sezzle argues that Plaintiff's retaliation claim should be dismissed because she has failed to allege that she engaged in protected activity under EPEWA. ECF No. 125 at 7–8. Sezzle argues that the FAC is devoid of claims that Plaintiff complained to Sezzle that she was being paid less *on the basis of gender discrimination*, only that she had not received the title change or pay increase in line with her newly assigned role. *Id.* Sezzle argues that without any allegation that Plaintiff complained to the company about *gender-based* pay discrimination specifically, she has failed to plead a claim of retaliation under the EPEWA, a statute designed to address gender-based pay disparities. However, Sezzle cites no case law or statutory authority to support its position and the Court is aware of none.

Colo. Rev. Stat. § 8-5-102(2)(d) states that an employer shall not "[d]ischarge, discipline, discriminate against, coerce, intimidate, threaten, or interfere with an employee or other person because the employee or person inquired about, disclosed, compared, or otherwise discussed the employee's wage rate." Under a plain reading of

the text, the Court finds that, Plaintiff's allegation that she was discharged on May 28, 2024 after she had inquired about her rate of pay is sufficient to state a claim of retaliation under § 8-5-102(2)(d). Nowhere in the text is there an explicit requirement that the aggrieved employee/person have complained of gender discrimination in order to have a cause of action.

Sezzle urges the Court to adopt the same standard for evaluating EPEWA retaliation claims as under the EPA. It cites *Melgoza v. Rush University Medical Center*, 499 F. Supp. 3d 552 (N.D. Ill. Nov. 09, 2020), for the proposition that general complaints about pay based on factors other than sex are not protected activity for the purposes of the EPA. ECF No. 141 at 2. However, the EPEWA's prohibition on wage discrimination under § 8-5-102 goes beyond that of the EPA under 29 U.S.C. § 206(d). While § 8-5-102(1) mirrors its federal counterpart in 29 U.S.C. § 206(d)(1), § 8-5-102(2) additionally concerns itself with preventing employers from using a prospective employee's wage rate history to determine their wage rate and the free flow of information and dialogue regarding wages in the workplace. § 8-5-102(2) provides:

(2) An employer shall not:

(a) Seek the wage rate history of a prospective employee or rely on the wage rate history of a prospective employee to determine a wage rate;

(b) Discriminate or retaliate against a prospective employee for failing to disclose the prospective employee's wage rate history;

(c) Discharge, or in any manner discriminate or retaliate against, an employee for invoking this section on behalf of anyone or assisting in the enforcement of this subsection (2);

(d) Discharge, discipline, discriminate against, coerce, intimidate, threaten, or interfere with an employee or other person because the employee or person inquired about, disclosed, compared, or otherwise discussed the employee's wage rate;

(e) Prohibit, as a condition of employment, an employee from disclosing the employee's wage rate; or

(f) Require an employee to sign a waiver or other document that:

(I) Prohibits the employee from disclosing wage rate information; or

(II) Purports to deny the employee the right to disclose the employee's wage rate information.

Colo. Rev. Stat. § 8-5-102(2). Under subsection 2(d), if an employee were discharged for openly discussing their wage—conduct that has no relation to *complaints of gender-based pay discrimination*—that would constitute retaliation under the EPEWA. Retaliation of this sort would undoubtedly impede transparency around wage rates and, in turn, prevent employees from uncovering whether they were being underpaid relative to their opposite-sex peers. Similarly, if an employee were discharged for inquiring about or discussing her pay with a supervisor/manager, that too would have a chilling effect on an employee's ability to demand equal pay.

Thus, interpreting the statute broadly and construing the well-pled allegations in favor of Plaintiff, the Court finds that Plaintiff's EPEWA retaliation claim is sufficient to survive a motion to dismiss.

### c. Wrongful Termination in Violation of Public Policy Claim

"In general, employment contracts are at-will and either the employer or the employee may terminate the relationship at any time without incurring legal liability." *Rocky Mountain Hosp. & Med. Serv. v. Mariani*, 916 P.2d 519, 523 (Colo. 1996). However, the Colorado Supreme Court has "recognized an exception to this general rule in situations where the employer terminated the employment contract in violation of public policy." *Castillo v. Denver Health & Hosp. Auth.*, 2022 WL 22926722, at *4 (Colo.

App. Jan. 6, 2022) (citation omitted). The Colorado common law claim for wrongful

termination in violation of public policy "restricts an employer's right to terminate when

the termination contravenes accepted and substantial public policies as embodied by

legislative declarations, professional codes of ethics, or other sources." *Wisehart v.*

*Meganck*, 66 P.3d 124, 127 (Colo. App. 2002) (citing *Rocky Mountain Hosp. & Med.*

*Serv.*, 916 P.2d 519).

> The public policy exception generally allows "at will employees to pursue
> claims for wrongful discharge if they allege that they were discharged
> because they either (1) refused to engage in conduct that would violate
> public policy, or (2) engaged in conduct that is protected or encouraged as
> a matter of public policy."

*Id.* (quoting *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666–67 (Colo. 1999)).

Plaintiff brings a claim for wrongful termination in violation of public policy against

Sezzle on what appear to be three separate bases. She claims that she was wrongfully

terminated for (1) exercising her rights under the EPEWA; (2) complaining to Sezzle

that her title and pay did not reflect the actual roles/duties she was performing; and (3)

informing Sezzle that it was "in violation of financial regulations due to not being

licensed in states in which it was operating and that it was using incorrect and

detrimental algorithms that were wrongfully sending borrowers' paid-up accounts to

collections." ECF No. 114 at 6–7.

### 1. Wrongful Termination in Violation of Public Polic—EPEWA Violation

To the extent that Plaintiff bases her wrongful termination claim on her alleged

EPEWA complaints to Sezzle, the Court agrees with Sezzle that this theory of liability

fails because EPEWA provides its own wrongful discharge remedy. "Colorado law is

clear that a separate public policy wrongful discharge claim is not available where the

statute at issue provides a wrongful discharge remedy." *Miles v. Martin Marietta Corp.*, 861 F. Supp. 73, 74 (D. Colo. 1994) (citing *Smith v. Colo. Interstate Gas Co.*, 777 F. Supp. 854, 858 (D. Colo. 1991); *Gamble v. Levitz Furniture Co.*, 759 P.2d 761, 766 (Colo. Ct. App. 1988)). *Hart v. Digitalzone Inc.*, No. 23-cv-00531-GPG-SBP, 2025 WL 1927622 (D. Colo. May 30, 2025), involved a similar situation where the plaintiff brought both an EPEWA retaliation claim and a wrongful termination claim based on the same set of facts. There, the court held that because the plaintiff had "a statutory remedy for th[e] [alleged] conduct, he cannot also bring a [wrongful termination in violation of public policy] claim," and dismissed the wrongful termination claim. *Id.* at *17 (citing *Basile v. Missionary Sisters of Sacred Heart of Jesus-Stella Maris Province*, No. 11-cv-01827-REB-KMT, 2011 WL 5984752, at *2 (D. Colo. Nov. 30, 2011)). Accordingly, the Court finds that to the extent Plaintiff's wrongful termination claim is predicated on the same facts underlying her EPEWA claims, she has an available statutory remedy (which she has sought under Count I), and therefore her claim for wrongful termination is subject to dismissal.

### 2. Wrongful Termination in Violation of Public Polic—Failure to Confer AML Title and Pay

Next, the Court agrees with Sezzle that Plaintiff's wrongful termination claim also fails to the extent that it is based on allegations that Plaintiff complained to Sezzle that it violated "FinCEN, FDIC, and bank sponsor guidance and rules" by not providing her with a formal AML Officer title and corresponding pay.

"The identification of a sufficiently clear expression of public policy is an issue of law for the court." *Kearl v. Portage Env't, Inc.*, 205 P.3d 496, 498 (Colo. App. 2008). "A plaintiff asserting a claim for wrongful discharge in violation of public policy must also

14

allege that the public policy invoked 'truly impacts the public in order to justify interference into an employer's business decisions.'" *Id.* (quoting *Crawford Rehab. Servs., Inc. v. Weissman,* 938 P.2d 540, 552).

Plaintiff fails to articulate how Sezzle's alleged refusal to match Plaintiff's internal title and pay to her external facing role would concern public policy or the public at large. Furthermore, the FAC does not specify any statute or rule that would be implicated by her discharge.

In its Motion, Sezzle explains that "FinCEN regulations outline the requirements for money services businesses' anti-money laundering programs, which include, as is relevant here, a requirement to '[d]esignate a person to assure day to day compliance with the [AML] program and [31 C.F.R. Chapter X].'" ECF No. 125 at 11 (quoting 31 C.F.R. § 1022.210(d)(2)). Sezzle argues that all these "regulations require is that a person be so *designated*; there are no requirements regarding conferral of an official title or any particular pay." ECF No. 125 at 11 (emphasis added). Upon reviewing 31 C.F.R. § 1022.210(d)(2), the Court finds Sezzle's argument to be persuasive.

In her response, Plaintiff points for the first time to 31 U.S.C. § 5318(h) as a potential source for a public policy mandate. ECF No. 138 at 3. This statute was not cited in the FAC. Moreover, 31 U.S.C. § 5318(h) only mandates that financial institutions "designate a[n] [AML] compliance officer," which Sezzle had done. The statute is silent on requirements regarding such an officer's internal title or rate of pay.

As the Tenth Circuit has ruled, to prevail on a wrongful termination in violation of public policy claim, "Colorado requires an employee to prove various elements, including (as relevant here) that the employer directed him to violate *some specific*

15

*statute, regulation, or professional code* related to public health, safety or welfare, or *some clearly expressed public policy* related to his responsibility as a citizen or his rights or privileges as a worker, or prohibited him from performing a public duty." *DeFazio v. Starwood Hotels & Resorts Worldwide, Inc.*, 554 F. App'x 692, 694 (10th Cir. 2014) (emphasis added). Sezzle states that it is unable to locate any authority that supports Plaintiff's claims that the failure to confer an internal title and pay consistent with her external designation is violative of any rule; and the Court is aware of none. Plaintiff's vague and conclusory allegation that Sezzle violated "FinCEN, FDIC, and bank sponsor guidance and rules" is insufficient to state a public policy.

Accordingly, the Court finds that Plaintiff's wrongful termination claim should be dismissed to the extent it relates to Plaintiff's dissatisfaction with her title and rate of pay. *See DeFazio*, 554 F. App'x at 694 (wrongful termination claim failed where plaintiff failed to identify any statute, rule, or public policy implicated by his dismissal).

### 3. Wrongful Termination in Violation of Public Policy— Whistleblowing Activity

Finally, the third basis for Plaintiff's wrongful termination claim is that she informed Sezzle that it was "in violation of financial regulations due to not being licensed in states in which it was operating and that it was using incorrect and detrimental algorithms that were wrongfully sending borrowers' paid-up accounts to collections." ECF No. 114 at 6. In the factual allegations portion of the FAC, Plaintiff alleges that "Sezzle was utilizing an algorithm that failed to report when a consumer borrower had paid their balance to Sezzle and, due to that failure, the algorithm automatically reported consumer borrowers to the collection agencies even if they were current with their Sezzle repayment obligations." *Id.* at 3. She claims that she was terminated for

16

informing Sezzle about their "fraudulent algorithm practices harming consumers" in violation of public policy. *Id.*

Sezzle argues that this theory of liability for wrongful termination fails because Plaintiff does not allege that "Sezzle required her to perform an illegal act, prohibited her from performing a public duty, or otherwise directed her to take or not take a particular action that violates public policy." ECF No. 125 at 15. However, Colorado "is in line with a number of other jurisdictions that shield whistleblowers from retaliatory discharge." *Kearl*, 205 P.3d at 499. *See, e.g.*, *Moyer v. Allen Freight Lines, Inc.*, 20 Kan. App. 2d 203, 885 P.2d 391, 393 (1994) ( "[T]ermination of an employee in retaliation for the good faith reporting of a serious infraction of . . . rules, regulations, or the law by a co-worker or an employer to either company management or law enforcement officials (whistle-blowing) is an actionable tort." (quoting *Palmer v. Brown*, 242 Kan. 893, 752 P.2d 685, 689–90 (1988))); *Drury v. Mo. Youth Soccer Ass'n*, 259 S.W.3d 558, 566 (Mo. Ct. App. 2008) (at-will employee has claim for wrongful discharge if discharged for reporting employer wrongdoing to superiors or for acting in manner public policy would encourage); *Barker v. State Ins. Fund*, 40 P.3d 463, 468 (Okla. 2001) ("Oklahoma law protects both internal and external reporting of whistle-blowers who establish a sufficient public policy violation from retaliatory discharge.").

In *Kearl*, the Colorado Court of Appeals found that the plaintiff sufficiently alleged wrongful termination in violation of public policy where he claimed that he was terminated for complaining to supervisors that certain technology the company was recommending to the government for remediation services at a uranium enrichment plant was unsound. Kearl alleged that he complained to his superiors about what he

17

considered to be a fraud on the government at the price of public health. *Kearl*, 205 P.3d at 500.

The instant matter is analogous to *Kearl*. Plaintiff alleges that she was terminated upon complaining to management that certain fraudulent company practices were harming U.S. consumers and borrowers. Plaintiff's allegations, if true, would clearly concern the public at large. The Court finds that Plaintiff's allegations are sufficient to put Sezzle "on notice of the 'clearly expressed public policy' element of [her] claim for wrongful discharge." *Id.* [4]

In line with Colorado precedent recognizing such wrongful termination claim for whistleblower activity, the Court finds that, at least for the purposes of a motion to dismiss, Plaintiff has stated a claim for wrongful termination in violation of public policy premised on her internal reporting of violations of financial regulations.

## IV.    CONCLUSION

For the reasons set forth above, it is hereby **RECOMMENDED** that Defendant Sezzle's Partial Motion to Dismiss Plaintiff's First Amended Complaint, ECF No. 125, be **GRANTED in part and DENIED in part** as follows.

- As to Plaintiff's EPEWA discrimination claim, the Motion should be **GRANTED**.

---

[4] In its reply brief, Sezzle argues that Plaintiff's public wrongful termination claim is pre-empted by the statutory remedy provided in Section 1057 of the Consumer Financial Protection Act ("CFPA"). ECF No. 141 at 3. Sezzle argues that "Section 1057 not only contains its own wrongful discharge remedy, but it also contains an administrative exhaustion requirement which Plaintiff has not claimed to (and cannot) satisfy." *Id.* However, Plaintiff does not cite the CFPA in her FAC. And while Plaintiff's allegation "that Sezzle was violating 'financial regulations' is not precise, when construed liberally, there is no reason to interpret her claim to be that she reported information pertaining only to offenses identified" in the CFPA. ECF No. 102 at 20 (Order of Judge Brimmer).

- As to Plaintiff's EPEWA retaliation claim, the Motion should be **DENIED**.

- As to Plaintiff's Wrongful Termination in Violation of Public Policy claim based on alleged EPEWA violations, the Motion should be **GRANTED**.

- As to Plaintiff's Wrongful Termination in Violation of Public Policy claim based on Sezzle's failure to confer on Plaintiff an official AML title and corresponding pay, the Motion should be **GRANTED**.

- As to Plaintiff's Wrongful Termination in Violation of Public Policy claim based on Plaintiff's internal reporting of the alleged violations of financial regulations, the Motion should be **DENIED**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge, *Thomas v. Arn*, 474 U.S. 140, 148–53 (1985), and also waives appellate review of both factual and legal questions.**

*Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*,

91 F.3d 1411, 1412–13 (10th Cir. 1996).

Dated at Denver, Colorado this 17th day of March 2026

_____
N. Reid Neureiter
United States Magistrate Judge