IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-2624-PAB-NRN

MARIA J. PRKIC

Plaintiff,

v.

SEZZLE, INC.,

Defendant.

---

**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 174)**

---

**N. REID NEUREITER**
**United States Magistrate Judge**

This matter is before the Court pursuant to an Order issued by Judge Philip A. Brimmer, ECF No. 177, referring Defendant Sezzle, Inc.'s ("Defendant" or "Sezzle") Motion for Summary Judgment, ECF No. 174. Plaintiff Maria J. Prkic ("Plaintiff") filed a response on May 19, 2026. ECF No. 184. Sezzle filed a reply on June 5, 2026. ECF No. 189.

The Court heard argument from the parties on June 23, 2026. *See* ECF No. 196. The Court has taken judicial notice of the Court's file and considered the applicable Federal Rules of Civil Procedure and case law. Now, being fully informed and for the reasons discussed below, the Court **RECOMMENDS** that the Motion for Summary Judgment, ECF No. 174, be **GRANTED.**

## I. BACKGROUND[1]

This is an employment case brought by Plaintiff against her former employer, Sezzle, a financial firm. She was terminated from her position as a paralegal on May 28, 2024. She originally brought a number of claims, some of which were dismissed on motion. The remaining claims in this case are: (1) violation of Colorado Equal Pay for Equal Work Act due to retaliation; (2) wrongful termination in violation of public policy; and (3) breach of contract. Sezzle has now moved for summary judgment on these remaining claims. ECF No. 174.

Sezzle argues that Plaintiff cannot prove a causal connection between her wage complaint and her subsequent termination, that it had legitimate, non-retaliatory reasons for Plaintiff's termination, and that Plaintiff cannot establish that the proffered reasons for her termination were pretextual. *See id.* at 10–11; ECF No. 189 at 5–6. Sezzle also argues that Plaintiff's wrongful termination claim is precluded by her reliance on Financial Crimes Enforcement Network ("FinCEN") regulations and the Consumer Financial Protection Act as the statutes at issue provide their own wrongful discharge remedies. ECF No. 174 at 16–17. Finally, Sezzle asserts that Plaintiff may not recover on her breach of contract claim due to resume fraud, which may be considered by the Court under the after-acquired evidence doctrine. *Id.* at 19–20. Consequently, Sezzle argues that it is entitled to summary judgment.

Notably, Plaintiff offers no contrary evidence to rebut Sezzle's evidence. Plaintiff took no depositions and submitted no affidavits in this matter.

---

[1] All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

Accordingly, as explained below, the Court agrees that Sezzle is entitled to summary judgment on all its claims.

a. **Statement of Undisputed Material Facts**

Sezzle's motion for summary judgment includes a separate statement of undisputed material facts ("SUMF") with citations to the supporting evidence. *See* ECF No. 174 at 2–9. In her opposition, Plaintiff responds to most facts with either an admission or a denial. *See* ECF No. 184. To the extent that Plaintiff either admits or does not meaningfully deny the factual allegations put forth in the SUMF, the Court will consider Sezzle's facts undisputed for the purposes of this motion.

On March 8, 2023, Sezzle hired Plaintiff as a paralegal. SUMF ¶ 1. When applying for the job, Plaintiff's resume indicated she was the chief compliance officer at Seke, LLC, with compliance and regulatory responsibilities. *Id.* ¶ 2. Plaintiff discussed this experience in her interview with Sezzle's general counsel, Jack Cohen. *Id.* ¶ 3.

An essential duty of the Sezzle paralegal position involved SEC filings. *Id.* However, Plaintiff's offer letter indicated that the "job duties, compensation, and benefits" may change from time to time. *Id.* Plaintiff began her employment with Sezzle on March 8, 2023, reporting to Mr. Cohen. *Id*. ¶ 6.

Shortly thereafter, Mr. Cohen submitted Plaintiff's name to the Sezzle Board of Directors for the company's anti-money laundering ("AML") officer role. ECF No. 114 at 3; ECF No. 175-5 at 2–3. On April 20, 2023, the Sezzle Board of Directors appointed Plaintiff to the AML officer role. ECF No. 114 at 3. Mr. Cohen noted in an email sent

several months later that Plaintiff's previous experience as a chief compliance officer influenced his decision to suggest Plaintiff as a candidate for the role. SUMF ¶ 7.

At some point in 2023, Plaintiff interacted with two customers who alleged separately that they had been reported to collections after having paid off their balance. *Id.* ¶ 8. One customer filed an arbitration complaint. *Id.* Plaintiff described these complaints as stemming from "an algorithm that failed to report when a consumer borrower had paid their balance to Sezzle" and instead, reported borrowers to collection agencies "even if they were current with their Sezzle repayment obligations." ECF No. 114 at 3. However, "algorithm" is Plaintiff's own description of the reported issue. SUMF ¶ 9. Plaintiff acknowledged that she did not know what the algorithm was because she is not an engineer despite using the term. *Id.*

Plaintiff investigated this "algorithm" issue at Mr. Cohen's direction. *Id*. Plaintiff met with engineers to determine the issue but was unable to figure out why or how the customers' issues occurred. *Id*.

Plaintiff discussed her actions and findings relating to the algorithm issue in legal meetings and to Mr. Cohen. *Id.* ¶ 10. Plaintiff also attended a legal department meeting where Mr. Cohen discussed claims made by states and customers that Sezzle had engaged in unlicensed operation in certain states. *Id.* ¶ 11.

On March 1, 2024, Lori Moore, an independent contractor, began an independent audit assessing Sezzle's internal system for screening customers. *Id.* ¶ 13.

As part of her audit, Ms. Moore interviewed Plaintiff as well as members of the engineering team. *Id.* ¶ 14.

On March 11, 2024, Sezzle terminated Jack Cohen's employment. The following day, Plaintiff met with her new supervisor, Kerissa Hollis, to discuss changes in the legal department after Mr. Cohen's departure. *Id.* ¶ 17.

On March 14, 2024, Plaintiff met with Jasper Helling and discussed her dissatisfaction with her pay and title as a "paralegal," which was her title despite performing AML officer duties. *Id.* ¶ 18. Shortly after that discussion, on March 20, 2024, Plaintiff received a 7.5% raise as well as a $10,000 bonus. *Id.* ¶ 20. This bonus was based on the company's performance in the prior year and was provided at the discretion of the company. *Id.*

On April 8, 2024, Plaintiff contacted Lee Brading, senior vice president of investor relations, to inquire about her title as she anticipated being asked to reach out to her counterpart at Sezzle's new proposed bank sponsor, WebBank. *Id.* ¶ 23. Mr. Brading said he would get back to Plaintiff after following up with Pam Perdue, Sezzle's chief compliance officer, and Plaintiff's supervisor, Ms. Hollis. *Id.* ¶ 24.

On April 26, 2024, Plaintiff met with Ms. Hollis who informed Plaintiff that WebBank expected a person with bank experience for the financial crimes compliance officer role. *Id.* ¶ 29. Accordingly, Plaintiff's AML officer title and duties would be moved to Ms. Perdue, the chief compliance officer for Sezzle. *Id.*

On April 29, 2024, Ms. Moore released the first draft of her audit findings. *Id.* ¶ 32. The draft noted Plaintiff had been interviewed to determine whether a risk assessment had been performed prior to making decisions with respect to the design,

development, and implementation of the solution. *Id.* ¶ 33. Ms. Moore found a risk assessment had not been conducted and that this task had been part of Plaintiff's job. *Id.*

Ms. Moore's draft also noted Plaintiff had been interviewed to determine which source lists were being used to scan Sezzle's databases. *Id.* ¶ 34. She found the source lists used by Sezzle's internal solution were insufficient. *Id.* This project was within Plaintiff's ambit as the AML and financial crimes officer and Plaintiff worked with the engineers to determine the appropriate lists. *Id.* Plaintiff had never built a tool like this before and had only been familiar with these systems as a test user. *Id.* Plaintiff could not recall any specific research she performed as part of this project. *Id.*

On May 2, 2024, Ms. Moore issued the final findings in her audit for the proprietary interdiction solution. *Id.* ¶ 35. The final report found the lack of comprehensive risk assessment prepared before the project began to be of high severity. *Id.* The final report also noted the lack of a complete source list for scanning databases to be of high severity. *Id.*

Plaintiff went on vacation for two weeks in early May. *Id.* ¶ 37. During Plaintiff's vacation, Ms. Hollis evaluated the legal department's functioning and determined the department did not need a second paralegal, as the department had not suffered in Plaintiff's absence. *Id.* ¶ 38.

On May 28, 2024, Mr. Helling and Ms. Hollis finalized their decision to terminate Plaintiff's employment. *Id.* ¶ 39. This decision was made after receiving feedback on Plaintiff's working style, including friction with the compliance department, evaluating the

legal department's functioning in Plaintiff's absence, and the audit findings that noted significant gaps. *Id.*

Mr. Helling and Ms. Hollis met with Plaintiff to inform her of her termination. *Id.* ¶ 40. Ms. Hollis informed Plaintiff that based on her assessment of the legal department's needs, there was no longer a role that was a good fit for Plaintiff. *Id.* ¶ 41. Ms. Hollis reminded Plaintiff that the reassignment of her AML duties was due to WebBank's expectations, not a decision by Sezzle. *Id.* ¶ 42. Mr. Helling provided a termination letter to Plaintiff the same day stating she had been terminated for below standard performance. *Id.* ¶ 43.

At her deposition, Plaintiff admitted Seke, LLC, where she claimed in her resume to have worked as a compliance officer, was an import/export venture shared with her sister that "never got off the ground." *Id.* ¶ 45. Plaintiff admitted the initiatives, policies, procedures, and processes listed on this portion of her resume never got past the research stage. *Id.* ¶ 46. None of these initiatives or processes were anti-financial crimes policies under United States law. *Id.* None had any relation to bank lending or bank sponsorships. *Id.*

Plaintiff further admitted that none of the regulator relationships listed on her resume for Seke, LLC, existed. *Id.* ¶ 47. Plaintiff never made any filings, monitored any compliance, or acted on any policies or procedures because there was no business occurring. *Id.* Plaintiff also admitted that, in her role at Dentons as an AML analyst, she had written "drafts" of AML policies that went up the chain of command. *Id.* ¶ 48. Sezzle's AML policy was the first time she had the responsibility as "owner" of such a policy. *Id.*

At her deposition, Plaintiff stated that she believed Sezzle's alleged "algorithm" issue as set forth in her complaint violated "FinCEN regulations." *Id.* ¶ 49. She also stated she believed the algorithm violated regulations related to the Consumer Financial Protection Bureau. *Id.*

## II. LEGAL STANDARDS

### a. Pro Se Plaintiff

Plaintiff proceeds pro se. The Court, therefore, "review[s] [her] pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Meixo*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). A plaintiff's pro se status does not entitle her to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

**b. Motion for Summary Judgment under Rule 56**

A motion for summary judgment serves the purpose of testing whether there is a need for trial. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003), *White v. York Int'l. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate when the motion "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court's determination depends on whether there are any genuine, factual issues that can be "properly resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The moving party bears the initial burden of showing a factual basis for its motion. *Celotex Corp. v. Catrett*, 477 US 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). A judge need not consider only the cited materials but may consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

Once the movant properly supports a motion for summary judgment, the non-moving party "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. Unsupported and/or conclusory allegations do not establish an issue of fact sufficient to defeat summary judgment. *MacKenzie v. City and Cnty. of Denver*, 414

F.3d 1266, 1273 (10th Cir. 2005); *see also McVay v. W. Plains Serv. Corp.,* 823 F.2d 1395, 1398 (10th Cir. 1987).

## III. ANALYSIS

### a. Violation of the Colorado Equal Pay for Equal Work Act

The Colorado Equal Pay for Equal Work Act (EPEWA) provides that "[a]n employer shall not . . . [d]ischarge, discipline, discriminate against, coerce, intimidate, threaten, or interfere with an employee or other person because the employee or person inquired about, disclosed, compared, or otherwise discussed the employee's wage rate." Colo. Rev. Stat. § 8-5-102(2)(d). The EPEWA became effective on January 1, 2021, and few courts have had occasion to apply it. However, courts apply the *McDonnell Douglas* burden-shifting framework for the Equal Pay Act and Title VII retaliation claims to determine whether retaliation played a part in an employer's employment decision. *See, e.g.*, *Bandokoudis v. Entercom Kansas City, LLC*, No. 22-cv-02155-EFM-GEB, 2022 WL 1460008, at *7 (D. Kan. May 9, 2022) (noting that "claims for retaliation under Title VII and the Equal Pay Act," are both "analyzed under the *McDonnell Douglas* framework."). Absent any indication of a contrary framework, the Court believes it appropriate to apply the *McDonnell Douglas* framework here in connection with Plaintiff's EPEWA retaliation claim.

At the first step of the analysis, the plaintiff must establish a prima facie case of retaliation. *Weiss v. Spencer*, No. 24-cv-00959-PAB-MDB, 2026 WL 820818, at *6 (D. Colo. Mar. 25, 2026) (citing *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006)). If the plaintiff succeeds, the defendant must then offer a legitimate, non-retaliatory reason for the adverse employment action. *Id.* The

defendant's burden at this stage is "exceedingly light" and the court cannot make a credibility assessment. *Id.* (citing *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1149 (10th Cir. 2011)). Once the defendant advances such a reason, to defeat summary judgment, the burden shifts back to the plaintiff to provide evidence "the defendant's proffered reason [was] pretextual." *Id.* (citing *Metzler*, 464 F.3d at 1170).

**i. Prima Facie Case of Retaliation**

"To state a prima facie case of retaliation, [the plaintiff] must show that: (1) she engaged in protected activity; (2) [the defendant] took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action." *Id.* at *7 (citing *Metzler*, 464 F.3d at 1171). Sezzle does not dispute the first two elements. Thus, the remaining question is whether Plaintiff provided any evidence to show a causal connection between her wage inquiry and her subsequent termination.

The only evidence Plaintiff offers to establish the causal connection is temporal proximity. "A retaliatory motive may be inferred when an adverse action closely follows protected activity." *Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1179 (10th Cir. 1999) (citing *Chavez v. City of Arvada*, 88 F.3d 861, 886 (10th Cir. 1996)). The Circuit has "held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation. *Id.* However, "a three-month period, standing alone is insufficient to establish causation." *Id.* The Circuit has declined to determine whether any period between six weeks and three months, by itself, is sufficient to support a retaliation claim. *See, e.g.*, *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248,

1253 (10th Cir. 2001) (declining to determine whether two months and three weeks, by itself, is sufficient to support a prima facie case of retaliation).

Here, Plaintiff alleges that the adverse action took place two months and two weeks after her protected activity.[2] ECF No.184 at 4. Specifically, she inquired about a wage increase on March 14, 2024, and she was subsequently terminated on May 28, 2024. ECF No. 114 at 3–4; *id.* at 5–6; ECF No. 184 at 4. Plaintiff's gap of two months and two weeks falls within the range for which the Circuit has declined to determine whether temporal proximity alone suffices to establish a causal connection. The Court assumes, without deciding, that the period of time between her complaints about her pay and her termination meets the causation requirement for the prima facie case.

**ii. Legitimate, Non-Retaliatory Reason for Termination**

Accepting that Plaintiff has established her prima facie case, the burden of production under the *McDonnel Douglas* framework shifts to Sezzle. Here, Sezzle must offer a legitimate, non-retaliatory reason for plaintiff's termination. *See Metzler*, 464 F.3d at 1170. "In other words, defendant's burden is to establish facts from which the court

[2] Plaintiff alleges that she complained about unequal pay on March 14, 2024, to Mr. Helling and again on April 8, 2024, to Mr. Brading. ECF No. 184 at 4. Plaintiff attached a copy of her conversation with Mr. Brading as an exhibit in her First Amended Complaint. *See* ECF No. 114, 37–38. Upon review of this discussion, Plaintiff does not appear to discuss her pay with Mr. Brading. Rather, Plaintiff appears to inquire about whether she should attend upcoming meetings and whether she should identify herself as a paralegal or the AML officer in discussions with WebBank. *Id*. Consequently, this Court will only consider the March 14, 2024, conversation as it pertains to Plaintiff's EPEWA retaliation claim.

may infer a proper reason behind defendant's decision to discharge plaintiff." *Richardson v. Topeka Metro. Transit Auth.*, 987 F. Supp. 887, 891 (D. Kan. 1997).

Sezzle claims that it "decided to terminate Plaintiff because of issues with Plaintiff's work performance (specifically the ability to work in a team with Ms. Hollis or the compliance team), discovered foundational gaps in Plaintiff's knowledge through Lori Moore's audit, and realized that the legal team functioned just as well in Plaintiff's absence." ECF No. 189 at 6. Considering that Sezzle's burden is "exceedingly light" at this stage, *see Carter*, 662 F.3d at 1149, and these reasons are not facially prohibited, the Court accepts Sezzle's proffered explanation for the termination as legitimate and non-retaliatory.

**iii. Pretext**

"A plaintiff demonstrates pretext by showing either that discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence." *Weiss*, 2026 WL 820818, at *8 (citing *Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1194 (10th Cir. 2016)). "The critical question regarding this aspect of the *McDonnell Douglas* rubric is whether a reasonable factfinder could rationally find the employer's rationale unworthy of credence and hence infer that the employer did not act for the asserted non-retaliatory reasons." *Id.*

"Pretext can be inferred from evidence regarding weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's explanation." *Id.* (citing *Walkingstick Dixon v. Oklahoma ex rel. Reg'l Univ. Sys. of Okla. Bd. of Regents*, 125 F.4th 1321, 1337 (10th Cir. 2025)). However, close temporal proximity alone is not sufficient to defeat summary judgment. *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1240

(10th Cir. 2004) (noting that "close temporal proximity is a factor in showing pretext" in Title VII retaliation cases; however, it "is not alone sufficient to defeat summary judgment").

Here, Plaintiff fails to establish that there is a genuine dispute as to whether Sezzle's explanations for terminating her employment were pretextual. To establish pretext, Plaintiff relies only on the close temporal proximity of her March 14, 2024, conversation and her May 28, 2024, termination. ECF No. 184 at 4. Plaintiff does not dispute any of Sezzle's alleged non-retaliatory reasons for termination, nor provide any affirmative evidence that would show that Sezzle's proffered reasons for termination were pretextual. Further, Sezzle increased Plaintiff's annual salary and provided her with a bonus six days after Plaintiff's salary complaint, a detail which tends to negate Plaintiff's temporal proximity argument. ECF No. 174-5 at 2. Considering that close temporal proximity alone is not enough to establish pretext, the Court finds that Plaintiff has not carried her burden of production to defeat summary judgment for this claim.

**b. Wrongful Termination in Violation of Public Policy**

"In general, employment contracts are at-will and either the employer or the employee may terminate the relationship at any time" without incurring legal liability. *Rocky Mountain Hosp. & Med. Serv. v. Mariani*, 916 P.2d 519, 523 (Colo. 1996). Colorado courts recognize a public policy exception to at-will employment permitting employees "to pursue claims for wrongful discharge if they allege that they were discharged because they engaged in conduct that is protected or encouraged as a matter of public policy." *Kearl v. Portage Env't, Inc.*, 205 P.3d 496, 498–99 (Colo. App. 2008) (citing *Coors Brewing Co. v. Floyd,* 978 P.2d 663, 666–67 (Colo. 1999)).

However, “Colorado law is clear that a separate public policy wrongful discharge claim is not available where the statute at issue provides a wrongful discharge remedy.” *Miles v. Martin Marietta Corp.*, 861 F. Supp. 73, 74 (D. Colo. 1994).

Plaintiff claims that “[a]fter assuming the AML [o]fficer position, [she] began noticing and reporting what she perceived to be violations of relevant financial crimes laws and regulations.” ECF No. 114 at 3. Specifically, she claims that the rules and regulations Sezzle violated fell under FinCEN as administered by the U.S. Department of the Treasury and the Consumer Financial Protection Bureau. ECF No. 174-1 at 4, 10. FinCEN and the Consumer Financial Protection Act provide their own wrongful discharge remedies. *Id.* at 16–17. Consequently, summary judgment should be granted on Plaintiff’s wrongful discharge claim because the statutes she relies on as the source of law for her whistleblowing conduct provide their own wrongful discharge remedies. *See Miles*, 861 F. Supp. at 74 (granting summary judgment on a wrongful discharge claim because the statute at issue provided a separate wrongful discharge remedy).

**c. Breach of Contract**

To state a breach of contract claim, a plaintiff must allege “(1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff.” *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (citations omitted). “An enforceable contract requires mutual assent to an exchange, between competent parties, with regard to a certain subject matter, for legal consideration.”

*Indus. Prods. Int'l, Inc. v. Emo Trans, Inc.,* 962 P.2d 983, 988 (Colo. App. 1997) (citing *Denver Truck Exch. v. Perryman,* 307 P.2d 805 (Colo. 1957)).

The parties dispute whether a valid contract existed regarding Mr. Cohen's alleged assurances to alter Plaintiff's salary and title after her promotion to AML officer. ECF No. 174 at 17–19; ECF No. 184 at 5. However, even if a valid contract existed, the after-acquired evidence doctrine provides Sezzle with a complete defense to Plaintiff's breach of contract claim. *See Crawford Rehab. Servs., Inc. v. Weissman*, 938 P.2d 540, 549 (Colo. 1997) ("hold[ing] that after-acquired evidence of resume fraud may provide an employer with a complete defense" to breach of contract claims if it can prove that the employee's concealment "undermined the very basis upon which he or she was hired").

"To assert the defense of after-acquired evidence of resume fraud, an employer must prove that the employee's fraud was material and that a reasonable, objective employer would not have hired the employee if it had discovered the misrepresentation at the outset." *Id.* Questions relevant to this determination include:

> First, would a reasonable employer have regarded the misstated or omitted fact as important? The nature of the misrepresentation and the extent to which it relates to the qualifications for the job may bear on this issue. Information about the employer's past conduct or policies may also bear upon this issue by focusing on what the employer regarded as important in a non-adversarial context. The second factor is whether the employee concealed or misrepresented the fact or facts with the intent of creating a false impression in the mind of the employer.

*Id.* (internal citations omitted).

The first prong of the test is met when considering all of Plaintiff's misrepresentations and omissions: Plaintiff (1) mispresented her experience as the chief compliance officer at Seke, LLC, a business that was never a functioning

company, ECF No. 174-1 at 12–13; (2) she misrepresented that she provided "guidance and advice to management, board members, and the general counsel on regulatory matters," while at Seke, LLC. In her deposition, she admitted that none of that guidance was actually provided, *id.* at 12; (3) she misrepresented that she was responsible for "developing, implementing, and maintaining the compliance program for global-regulated entities including periodic risk assessment. In her deposition, she admitted that the compliance program she produced was never implemented, *id.* at 12–13; and (4) she misrepresented that she managed "the regulatory relationships with the CBI, FCA, FINRA, SEC, IIROC, OSC, ASOC, SFC, and any other regulators that may be required," despite admitting in her deposition that Seke, LLC, had no regulatory relationships with any of these entities*, id.* at 13. Considering that the Sezzle paralegal role required substantial regulatory compliance and securities experience, a reasonable employer would have considered these misstatements to be material and important to the hiring decision.

As to the second prong, Plaintiff appeared to misrepresent this information with the intent of creating a false impression in Sezzle's mind. Specifically, Plaintiff misrepresented substantial portions of her regulatory and compliance experience when applying for and interviewing for a position that involved related duties. *See* ECF No. 175-3 at 2. Plaintiff's intent to create a false impression may be inferred from these misrepresentations. *See, e.g.*, *Crawford*, 938 P.2d at 551 (noting that intent may be inferred from circumstantial evidence including misrepresentations and knowledge of false statements). There is no genuine issue of material fact as to whether Plaintiff made material misrepresentations on her resume with the intent to mislead Sezzle into

hiring her. Consequently, Plaintiff's recovery under her breach of contract claim should be barred due to the after-acquired evidence doctrine regarding her resume fraud. *See id.* at 550–51 (upholding summary judgment in favor of the employer because the after-acquired evidence defense provided a complete bar to the employee's breach of implied contract claim).

## IV. CONCLUSION

For the reasons set forth above, it is hereby **RECOMMENDED** that Defendant's Motion for Summary Judgment, ECF No. 174, be **GRANTED** as to all claims.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, *Thomas v. Arn*, 474 U.S. 140, 148–53 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412–13 (10th Cir. 1996).**

Dated at Denver, Colorado this 19th Day of October 2026.

N. Reid Neureiter

N. Reid Neureiter
United States Magistrate Judge